AMERICAN EXCHANGE NATIONAL BANK OF DALLAS v. SWOPE &
MANGOLD.

Decided April 6, 1907.

**1.—Unsafe Building—Liability—Landlord and Tenant.**

As between a landlord and tenant, in the absence of a covenant on the part of the landlord to repair, there is no implied warranty by the landlord that the premises are in a tenantable condition.

**2.—Same.**

When a structure is leased to several independent tenants, in the absence of a covenant there is no warranty by the lessor that the structure is fit for occupancy, and he does not become responsible for injuries caused from a defect in the structure, unless made so by some concealment or misrepresentation on his part.

**3.—Same.**

In a suit by a tenant against his landlord for damage to a stock of goods caused by the collapse of the rented building, evidence considered, and held not to support a finding against the landlord.

Appeal from the District Court of Dallas County. Tried below before Hon. Thomas F. Nash.

*J. J. Eckford* and *Coke & Coke,* for appellant.—That the court erred in not instructing a verdict for defendant, cited:—Lynch v. Ortlieb, 70 Texas, 727; Lynch v. Ortlieb, 87 Texas, 591; Perez v. Rabaud, 76 Texas, 191; Marshall v. Heard, 59 Texas 267; Texas Loan Agency v. Fleming, 92 Texas, 458; Oriental Hotel Co. v. Sline, 17 Texas Civ. App., 695; Martinez v. Thompson, 80 Texas, 568; Doyle v. U. P. Ry. Co., 147 U. S., 413; Doupe v. Genin, 45 N. Y., 119; Jones v. Millsaps, 23 L. R. A., 155; Ward v. Fagin, 10 L. R. A., 147; Kline v. McLain, 5 L. R. A., 400; Krueger v. Ferrant, 43 Am. Rep., 223; Shackford v. Coffin, 49 At. Rep., 57; Dutton v. Gerrish, 55 Am. Dec., 45.

*F. M. Etheridge, R. S. Baker* and *H. E. Jackson,* for appellee.—The owner of a building, who lets the entire premises to one or to several tenants in severalty, thereby relieves himself of all duty to repair, and all liability for defects in the building, such duty and such liability having shifted to the several tenants; but where any portion of the building has not been leased, it remains in the possession and occupation of the owner, and upon him rests the duty of exercising ordinary care and prudence to keep the same in repair, failing in which he becomes responsible to any party, whether tenant or stranger, who may be damaged because of such failure. O'Conner v. Andrews, 81 Texas, 28; Sawyer v. McGillicuddy, 10 Am. St. Rep., 263; Jones v. Freidenburg, 42 Am. Rep., 87; Wright v. Macdonnell, 88 Texas, 146; Waite v. O'Neill, 76 Fed. Rep., 413; Alexander v. Dorsey, 56 Am. Dec., 443; Hines v. Willcox, 54 Am. St. Rep., 823.

RAINEY, CHIEF JUSTICE.—The appellees sued to recover from appellant damages for destruction of and injury to a stock of liquors, cigars, saloon fixtures, etc., caused by the falling of a building owned

by appellant, a portion of which building was leased from appellant and occupied by appellees as a saloon.

Appellant answered by general and special exceptions, general denial and specially that appellees held a portion of said building under a written lease, by the terms of which appellees were to take good care of that portion of the building and suffer no waste, and at their own expense and cost keep the premises in good repair. And further answered that all other portions of the building were in the possession of other tenants at the time it fell, holding under leases from appellant similar to that of appellees, and that when said building fell no part or portion thereof was in the possession or control of appellant, but that the whole thereof was in the possession and control of appellees and said other tenants, under leases as aforesaid.

A trial before a jury resulted in a verdict in favor of appellees for $35, admitted to be due as a refund on account of rents, and for $250 for injury to property, from which judgment this appeal is prosecuted.

The building was owned by appellant and situated in the city of Dallas, on the corner of Main and Murphy Streets. It fronted fifty feet on Main Street and run back on Murphy Street one hundred feet. The building was of brick and covered the said 50 by 100 feet. The west one-half of the lot—that is 25 feet fronting on Main Street and running back 100 feet on Murphy—was three stories high and the east or inside one-half was two stories high. Under the building were two cellars, each about 25 feet in width and running back 75 feet. There was a partition brick wall separating the cellars, running from Main Street back 75 feet. In this wall was a door or opening. The cellars were 7½ or 8 feet deep, that is, it was that distance from the ground floor to the bottom of the cellars. The walls to the cellars which include the partition wall, constituted the foundation of that part of the building resting thereon. The cellar under the inside 25 feet was not lighted, the walls not cemented, nor was it used. The cellar under the west or outside 25 feet was cemented and used for storing empty bottles and kegs. There was an entrance to this cellar from the outside on Murphy Street. By the terms of the lease the cellar was not included in the contract, but had been used by Swope & Mangold, appellees, in the manner stated since the beginning of their lease, which was in 1889. In 1900 the appellant became the owner of the building, having purchased it from one Childress. Appellees were then in possession and occupying the first story or ground floor of the west 25 feet in which they had a saloon and had so occupied it since 1889. After appellant purchased the building it leased the same 25 feet on first floor to appellees and they were so occupying it until 1902, under their lease, when the partition wall in the cellar crushed in and the building fell, and caused the damage. The partition wall had become what the architects and constructors termed, "water-logged," that is the brick and mortar had rotted from water passing under it. This condition was not discovered until after the building fell. This defect was not discoverable to the ordinary individual by merely looking at it but would have been to an architect or constructor. The lease provides that the "Lessees (appellees) shall

take good care of the property and its fixtures and suffer no waste; and shall at their own expense and cost keep said premises in good repair: keep the plumbing work, closets, pipes and fixtures belonging thereto in repair, and keep water pipes and connections free from ice and other obstruction, etc., and at the end or other expiration of the term shall deliver up the demised premises in good order and condition, natural wear and tear and damages by fire and the elements only excepted." Appellant never knew of the defect in the building, made no representations as to its condition, never practiced any deceit nor concealed anything in relation thereto from appellees, but supposed it safe and sound. The appellees had used and occupied the premises from 1889 until it fell in 1902. They knew of no defect and considered it safe. The other portions of the building not occupied by appellees were occupied by other tenants under leases similar to appellees.

As between the landlord and tenant, in the absence of a covenant on the part of the landlord to repair, there is no implied warranty on the part of the landlord that the premises are in a tenantable condition. Perez v. Rabaud, 76 Texas, 191. Where a structure is leased to several independent tenants, in the absence of a covenant, there is no warranty by the lessor that the structure is fit for occupancy, and he does not become responsible for injuries caused from a defect in the structure, unless made so by some concealment or misrepresentation on his part.

It is contended by appellees that the entire structure here under consideration was not leased, in that the cellars were under the control and disposal of appellant and therefore appellant was liable for injury caused by the giving way of the partition wall in the cellar which caused the structure to fall. The question, therefore, is, whether or not the appellant was in such possession and occupancy of the cellar, and the conditions existing and the use made thereof made it liable to appellees for the injury caused by the collapse of said structure?

The cellars, so far as the evidence shows, had never been put to any use, except that of storing bottles and kegs by appellees and this use was made by them under their lease from Childress, as well as under the lease from appellant. That the wall was water-logged was not known to any one; nor was the existence of the cause of it being water-logged known to, or suspected by, any one before the collapse of the structure. The defect was latent and would have been discovered only by an architect or constructor, and that from the inside cellar which was dark and never used. Not knowing that the wall was liable to become water-logged and no cause existing that would cause appellant to suspect the existence of the defect, it was not called upon to make an inspection or have one made by an architect or constructor. Appellant not having warranted the security of the structure, nor having made any misrepresentations or concealed anything from appellees, we do not think appellant is liable for the injury. Besides, the appellees using and occupying the cellar in the manner stated and being more familiar, if anything, than the appellant, with the situation, they must be held to have assumed the risk of danger and are thereby prevented from recovering.

There is no material conflict in the evidence and we are of the opinion that the peremptory instruction requested by appellant should have been given. We will therefore render such judgment as should have been rendered below.

The verdict for $35 with interest for appellees is affirmed, but the verdict for $250 with interest in appellees' favor is disapproved, and judgment for $35 and interest is entered for appellees, and the judgment for $250 is reversed and judgment here rendered for appellant that appellees take nothing for the injury to their property.

*Affirmed in part, reversed and rendered in part.*

Writ of error refused.