## DOFNER v. BRANARD.

### No. 12177.

Court of Civil Appeals of Texas.
San Antonio.

Jan. 10, 1951.

Rehearing Denied Feb. 7, 1951.

G. Woodson Morris, San Antonio, for appellant.

Davis, Clemens, Knight & Weiss, San Antonio, for appellee.

W. O. MURRAY, Chief Justice.

This suit was instituted by Charles Dofner against W. E. Branard, seeking to recover damages alleged to have resulted to plaintiff when he fell over a jack handle in a filling station operated by Branard. The cause was submitted to the jury on special issues, and based upon their verdict judgment was rendered that the plaintiff take nothing, from which judgment Charles Dofner has prosecuted this appeal.

Appellant's first point is to the effect that the court erred in admitting in evidence certain photographs. We overrule this contention. The photographs introduced in evidence were shown by the testimony of several witnesses to be correct representations of the filling station and the location of certain automobiles and the jack handle over which plaintiff fell and allegedly injured himself. Plaintiff complains because the witness McCormick, who had used the jack and who was under the automobile which had been jacked up when the accident occurred, was not questioned about the correctness of the photographs and as to the position of the jack handle. McCormick was produced as a witness, and appellant had the opportunity to examine him as to the pictures offered in evidence if he had cared to do so. The correctness of the pictures was shown by several witnesses, and they could not be rendered inadmissible because the particular witness, McCormick, was not questioned as to their correctness, even though he was the man who had jacked up the Chevrolet car and left the jack handle protruding from the car, over which appellant fell. McCormick was under the car at the time plaintiff fell over the jack handle and apparently had very little opportunity to see just how the accident occurred. No particular witness, not even the photographer who took the pictures, need verify them. It is only necessary that some witness having knowledge of the facts testify that they are substantially correct. Williams v. State, 126 Tex. Cr.R. 42, 69 S.W.2d 759; Wise v. City of Abilene, Tex.Civ.App., 141 S.W.2d 400; Parish v. State, 145 Tex.Cr.R. 117, 165 S. W.2d 748; Richardson v. Missouri-K.-T. Railroad Co., Tex.Civ.App., 205 S.W. 2d 819.

■ Even if there was a conflict in the evidence as to the accuracy of the photographs, they nevertheless would be admissible in evidence and their correctness would become a question of fact for the jury. Empire Gas & Fuel Co. v. Muegge, 135 Tex. 520, 143 S.W.2d 763; McCasland v. Henwood, Tex.Civ.App., 213 S.W.2d 555; Sellers v. State, 93 Ark. 313, 124 S.W. 770; Funke v. St. Louis–San Francisco R. Co., 225 Mo.App. 347, 35 S.W.2d 977; Bane v. Atlantic Coast Line R. Co., 171 N.C. 328, 88 S.E. 477; Hughes v. State, 126 Tenn. 40, 148 S.W. 543.

■ Appellant contends that the photographs were staged and constitute a re-enactment of the accident. We cannot agree with this contention. The photographs went no further than to show the scene of the accident, the jack handle involved in the accident, and the location of the various persons and objects which were shown to be present at the time of the accident. However, if the photographs had attempted to reproduce or re-enact the accident they would still be admissible in evidence. Richardson v. Missouri-K.-T. Railroad Co., Tex.Civ.App., 205 S.W.2d 819; Woolam v. Central Power & Light Co., Tex.Civ.App., 211 S.W.2d 792; Moore v. State, 128 Tex.Cr.R. 459, 81 S.W.2d 1015.

Appellant next complains of the definitions given by the court of "proper lookout." The court in submitting Issue No. 14, which inquired as to whether or not appellee's employees failed to keep a "proper lookout" for the safety of plaintiff, gave the following definition of "proper lookout": "You are instructed that by the term 'proper lookout,' as used in the foregoing question, is meant such a lookout as a person of ordinary prudence would have kept under the same or similar circumstances."

And in submitting Issue No. 17, inquiring as to whether plaintiff failed to keep a "proper lookout" immediately prior to the accident in question, gave the following definition of "proper lookout": "The term 'proper lookout,' as used in the foregoing question, is such a lookout for pos-sible obstacles in his path as an ordinarily prudent person would have kept under the same or similar circumstances."

■ We are of the opinion that these definitions were proper, and that the court did not commit error in giving these two different definitions. In submitting a definition in connection with Issue No. 14, the court was inquiring of the jury whether appellee's employees failed to keep a proper lookout for the safety of the plaintiff generally. While in submitting Issue No. 17 the court was interested only in whether or not the plaintiff kept a proper lookout for possible obstacles in his path. Gross v. Dallas Railway & Terminal Co., Tex. Civ.App., 131 S.W.2d 113; Texas & N. O. Railway Co. v. Young, Tex.Civ.App., 148 S.W.2d 229.

■ Appellant did not except to the manner of submitting Issue No. 14, and even if there was error in the manner of submitting Issue No. 17 it was harmless error, as the judgment is supported by findings of the jury on other issues. Texas & N. O. Railway Co. v. McGinnis, 130 Tex. 338, 109 S.W.2d 160; 3B Tex.Jur. 706. In that case the court found that appellee was guilty of no acts of negligence and that the plaintiff was guilty of contributory negligence proximately causing his injuries, if any; that the appellant was not an invitee in the filling station; that the fall was an unavoidable accident, and finally that the appellant suffered no damages. Under such circumstances the case should not be reversed under the provisions of Rule 434 Texas Rules of Civil Procedure.

Appellant next complains because the phrase "if any" was used in connection with Issue No. 16, and not used in connection with Issue No. 18. In this there was no error. Issue No. 18 was only to be answered in the event the jury had answered Issue No. 17 in the affirmative. Therefore, the phrase "if any" was not required in Issue No. 18, and, as above stated, if this was error it was harmless and immaterial in view of the jury's answers to other special issues.

■ Appellant next contends that the court erred in submitting the issue of un-

avoidable accident to the jury. Appellant contending that it was undisputed and admitted that this was not an unavoidable accident. This being true, the submission of such issue to the jury was harmless error. Southern Underwriters v. Boswell, Tex.Civ.App., 141 S.W.2d 442; Republic Insurance Co. v. Dickson, Tex.Civ.App., 110 S.W.2d 642; Guffey v. Collier, Tex. Civ.App., 203 S.W.2d 812.

■■ Appellant also contends that the issue of whether or not appellant was an invitee in appellee's filling station should not have been submitted to the jury, as it was conclusively shown that he was such an invitee. We overrule this contention. There was evidence that appellant stopped at the filling station for the purpose of purchasing gasoline, and if this be true he would be an invitee. But there is also evidence that he stopped at the filling station for the purpose of obtaining information about where he might find a trailer camp, and under such circumstances he would not be an invitee. The court properly submitted this question to the jury.

■ Appellant next contends that the court erred in submitting to the jury the question as to whether or not appellant failed to see the jack handle, inasmuch as the appellant had testified that he did not see the jack handle. We overrule this contention. Appellant was an interested party and his testimony was not conclusive, and the court was not required to accept such testimony as conclusive. However, if the evidence did conclusively show that appellant failed to see the jack handle, then the error in submitting the issue to the jury was harmless. Southern Underwriters v. Boswell, Tex.Civ.App., 141 S.W. 2d 442, affirmed 138 Tex. 255, 158 S.W.2d 280; Republic Insurance Co. v. Dickson, Tex.Civ.App., 110 S.W.2d 642; Guffey v. Collier, Tex.Civ.App., 203 S.W.2d 812.

■ Appellant next contends that the court committed prejudicial error in permitting counsel for appellee to interrogate appellant "at great length to the various times he filed an income tax return, how old his father was and all the places he worked, all the defense plants plaintiff worked in during the war, and further, in permitting said counsel to ask similar questions of plaintiff's father, over all the repeated objections that said line of inquiry was inadmissible, irrelevant and immaterial; for its only purpose was, and could be, for no other purpose than to prejudice the plaintiff in the eyes of the jury, and it definitely had that effect as is reflected in the verdict of the jury." We overrule this contention.

Appellant had alleged that prior to the injuries he received from the fall in the filling station he was in good physical condition, was working and employed all the time. He sought damages for diminished earning capacity. Appellant testified that prior to the accident he had worked regularly and earned around $200 or $250 a month. On cross-examination appellant admitted that in 1923 he had filed a disability claim with the Veterans Administration, which was allowed, and that he had been receiving such disability compensation continuously ever since. After 1943, his percentage of disability was 50%. Appellant admitted that in 1940 he retired and since that date had traveled around the country in a trailer with his father. At the time of the trial plaintiff was 55 years of age. He admitted that during the period from April, 1946, to June, 1947, he "didn't do a bit of work." During the war in the years 1942 and 1943 he and his father were in Phœnix, Arizona, for about eleven months. His father was 74 years of age at the time he got a job in the defense plant, but plaintiff didn't go to work in such plant. Appellant's counsel objected to this line of testimony on the ground that it was immaterial. In the course of the argument of counsel to the court in connection with appellant's objection, appellee's counsel stated, "It bears directly upon this man's physical condition, he was either disabled at that time or was the worst slacker this country ever had." Then appellant broke in with the remark, "That's a damn lie, I never was a slacker. I don't care what anybody says." The court, at the request of appellant's counsel, instructed the jury not to consider the above quoted remark of appellee's counsel. Later in the trial,

the appellant again injected the slacker question into the case by giving the following answer, which was not responsive to the question asked, "A. No, you didn't, you called me a slacker." The plaintiff's father testified that he and his son were partners, pooling their earnings and placing them in a common bank account. Appellant admitted that during the war period there were lots of jobs available where he was. He said he couldn't get work because he didn't have his birth certificate and couldn't get work at air fields because he had to join the army in order to work, there being no civilian employees at air fields. Appellant's testimony was vague and conflicting as to when he last filed an income tax return. At the trial he testified that he had last filed his return in 1947, while in his deposition he stated that his last return was filed in 1946. In his deposition he refused to state what his yearly income was for 1948. Appellant's father testified that his son didn't work in any defense plant during the war because "he couldn't pass the physical examination." Appellant's wife admitted in her deposition that she was unable to give any estimate as to plaintiff's income in 1947. She also admitted that she was unable to state whether her husband had filed an income tax return for 1948. She was vague when asked whether plaintiff worked with regularity and stated only, "when he was working he worked." She would not corroborate plaintiff's testimony that he made as much as $250 per month before the accident.

In a personal injury suit where the plaintiff is seeking damages for alleged injuries or incapacity, and for alleged lost earnings and diminished earning capacity, evidence as to previous earnings is relevant and material. Gulf, C. & S. F. R. Co. v. Silliphant, 70 Tex. 623, 8 S.W. 673; Galveston, H. & S. A. R. Co. v. Harling, Tex.Com.App., 260 S.W. 1016; Galveston, H. & S. A. R. Co. v. Contois, Tex.Civ.App., 279 S.W. 929, affirmed, Tex.Com.App., 288 S.W. 154; Grocers Supply Co. v. Stuckey, Tex.Civ.App., 152 S.W.2d 911; McIver v. Gloria, 140 Tex. 566, 169 S.W.2d

710; El Paso Electric R. Co. v. Murphy, 49 Tex.Civ.App. 586, 109 S.W. 489.

Likewise, evidence as to appellant's condition or disability prior to the accident is plainly admissible. Missouri, K. & T. R. Co. v. Corse, 46 Tex.Civ.App. 60, 101 S.W. 522; St. Louis & S. F. R. Co. v. Ross, Tex.Civ.App., 89 S.W. 1105; Western Produce Co. v. Folliard, 5 Cir., 93 F.2d 588; Jones v. St. John, Tex.Civ.App., 178 S.W.2d 181.

The argument made by appellee's counsel to the court, to the effect that appellant either worked during the war period or was the worst slacker this country has ever had, was insufficient to call for a reversal of this case, in view of the fact that the court instructed the jury not to consider such remarks, and in view of the further fact that appellant voluntarily injected the matter into the case after the jury had been instructed not to consider it.

Appellant's tenth point relates to alleged jury misconduct. This point is based upon the following allegation in appellant's motion for a new trial, to-wit: " * * * That during the course of the trial of this cause a man, whose name is well known to defendant and who was talking to and with him at various times during the course of the trial of this case, but who and whose name is not known to the plaintiff herein, was talking to and very friendly with, at various times during the course of the trial of this case, a number of the jurors herein, during the various adjournments, out in the hall of the courthouse, and upon one occasion this same man showed one of the jurors something in a note book."

At the hearing on motion for a new trial no juror testified. The only testimony offered by appellant was that of himself, his wife and his father. Appellant's wife testified that during the course of the trial she noticed a man who sat in the audience section of the court room and was with the defendant from time to time during some of the recesses. She noticed this man in the court house corridor sitting with one

of the jurors. This man was later identified as one T. C. Rowe, and the juror as one Rylander. On cross-examination she admitted that she had been very active in the trial, conferring with plaintiff's counsel constantly during the trial; after court session, she frequently went back to the office of appellant's attorney and discussed what had happened during the day, but she never told counsel about the chatting between Rowe and Rylander in the court house corridors until after the trial. She admitted that she, appellant, and appellant's father were, on occasions, in the court house corridor during recess, when the jury was also there, and that she had smiled and spoken to jurors to the extent of saying good morning or some other pleasantry. She said she attached no importance to Rowe and what he was doing until after the verdict came in. She further admitted that after the trial she went out with appellant's attorney and talked to various members of the jury. Appellant testified that he noticed Rowe being affable to one member of the jury in the court house corridor during recess. He further testified that he thought that it was very important at the time, and then said he didn't think it was important at that time.

 Appellant's father testified that he was under the rule and sat in the court house corridor during the trial, and that during a recess he noticed Rowe talking to some of the jurors in a friendly fashion, and on one occasion showed one or more of the jurors something in a notebook he had. He said he didn't think anything about it at the time and never mentioned it to plaintiff's counsel until after the trial. Appellee placed C. T. Rowe on the stand. He testified that he was a friend and former employee of appellee and that he as a friend witnessed the trial. He denied that he at any time during the trial had any discussion with any juror about the case. He stated that, other than pleasantries or good morning, he said nothing to any of the jurors. He further testified that he noticed appellant's father and appellant's wife exchanging substantially the same sort of pleasantries during the trial. He denied that he showed any juror a book and denied that he showed any juror anything of any kind. He was not cross-examined by appellant. The trial judge overruled appellant's motion for a new trial and thereby impliedly found that no jury misconduct took place. Swanson v. Fort Worth Transit Company, Tex.Civ. App., 209 S.W.2d 772; Boyd v. Texas Employees Insurance Association, Tex.Civ. App., 207 S.W.2d 709; Monkey Grip Rubber Co. v. Walton, 122 Tex. 185, 53 S.W. 2d 770; Tumlinson v. San Antonio Brewing Ass'n, Tex.Civ.App., 170 S.W.2d 620; Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462.

Accordingly, the judgment of the trial court is affirmed.