John Henry SMITHEY, Appellant,

v.

Carl CENTER et al., Appellees.

No. 3579.

Court of Civil Appeals of Texas.

Eastland.

Feb. 24, 1961.

Rehearing Denied March 17, 1961.

John N. Barnhart and James E. Coate, Beeville, for appellant.

Beckmann, Stanard, Wood & Vance, San Antonio, for appellees.

GRISSOM, Chief Justice.

On the night of August 20, 1958, a loaded cattle truck owned by Carl Center was being driven by Riley Center, assisted by Carl Borgfield, from San Antonio to Los Angeles. While the truck was being driven west on highway 90, the gasolene tank which was then being used became empty. The engine sputtered and the driver attempted to switch to another gasolene tank but failed because the switch "froze". The driver coasted awhile and the truck stopped, or stalled, with part of the trailer on the main traveled portion of the highway. While the trailer was in that position John Henry Smithey was driving his automobile west, returning to work from his home in Stockdale to a drilling rig at Kermit. Mr. Smithey drove his automobile into the rear end of the trailer and was injured. He suffered a brain injury, causing amnesia. Smithey sued Carl and Riley Center for damages.

A jury found that (1) the operator of defendant's truck allowed it to stop with part of the trailer on the main traveled portion of the highway; that (2) this was negligence and (3) a proximate cause of the collision; that (4) defendants did not fail to have the vehicle equipped with one or more lamps exhibiting a red light visible under normal conditions from a distance of 500 feet to the rear; that (7) defendants failed to immediately display upon the highway a lighted fusee placed on the roadway at the traffic side of the truck capable of being seen a distance of 500 feet under normal conditions but that (8) this was not negligence, nor (9) a proximate cause of the collision; that (10) the failure of the defendants to, as promptly as possible, place three lighted flares at certain distances in advance of the truck was not negligence; that (13) defendants fail-

ed to, as promptly as possible, place three portable reflector units at certain distances in advance of the truck and that (14) this was negligence and (15) a proximate cause of the collision.

The jury found, however, (16) that immediately prior to the collision Smithey failed to keep such a lookout as a person of ordinary prudence would have kept under the same or similar circumstances and that (17) this was a proximate cause of the collision. It found that (18) Smithey was driving his automobile immediately prior to the collision in excess of 55 miles per hour and that (19) this was a proximate cause of the collision. But, it found, in answer to issue 20, that Smithey immediately prior to the collision was not operating his automobile at a greater rate of speed than a person of ordinary prudence would have operated it under the same or similar circumstances. The jury found (22) that immediately prior to the collision Smithey failed to have his automobile under such control as a person of ordinary prudence would have under the same or similar circumstances and that (23) this was a proximate cause of the collision.

The jury found (24) that the collision was not the result of an unavoidable accident. It found (25) that $40,176.30 would reasonably compensate Smithey for his injuries.

Based on the verdict, the court rendered judgment for the defendants and Smithey has appealed.

Smithey requested the court to submit his issues 18 and 19, thereby submitting the doctrine of sudden emergency. Requested issue 18 inquired whether Smithey immediately prior to the collision was acting under an emergency. In connection therewith a definition of emergency was submitted. Requested issue 19 inquired whether after the emergency arose Smithey acted as an ordinary prudent person would have acted under the same or similar circumstances. The refusal of the court

to submit said requested issues is urged as a ground for reversal of the judgment. Appellees' counterpoint is to the effect that the court correctly refused to submit the requested issues on sudden emergency because appellant included in a single instrument requesting said issues seventeen other requested issues, some of which were in the court's charge and because there was no evidence of a sudden emergency. In connection therewith appellees present a counterpoint to the effect that the evidence was sufficient to show, as the jury found, that Smithey failed to keep a proper lookout and failed to have his automobile under proper control and that such acts of contributory negligence proximately caused the collision. In support of appellant's contention that the judgment should be reversed because the court refused to submit said requested issues on sudden emergency, appellant says the burden of proof was upon the defendant to establish that Smithey was guilty of contributory negligence. (The appellee concedes such to be the law.) Appellant also says the presumption obtains on behalf of an injured party that he was taking due precautions for his own safety until such presumption is dispelled by evidence to the contrary. Relative to Smithey's inability to testify as a result of amnesia caused by the accident, appellant quotes from Boaz v. White's Auto Stores, 141 Tex. 366, 172 S.W.2d 481, 483, the following:

> "The question must be approached from the view point of the deceased. His lips are closed and we do not have the benefit of his version of the occurrence. There is not the slightest suggestion that he was bent on self-destruction, and the strongest of presumptions is that he was not."

Appellant says that the failure of a motorist to stop before colliding with an object in the road may be excused when the headlights of oncoming automobiles interfere with the driver's vision. He contends there was no evidence he failed to keep a proper lookout or that he failed to have proper

control of his automobile or, in the alternative, that there was "not sufficient evidence" thereof, in the face of the strong presumption arising by reason of defendant's wrong having deprived Smithey of his memory; that, in addition, the evidence shows Smithey was faced by the unusually bright headlights of the Layton and Drury pickups; that Layton's headlights were rapidly blinked, which had a devastating effect on his "haze covered windshield" caused by the humid atmosphere. Appellant says that, although he should have expected the usual headlights, when he was suddenly faced with terrifically "high and bright" headlights affecting his windshield in a peculiar "glittering way" his standard of care can only be judged in the light of this sudden emergency and that such evidence raised the issue of sudden emergency. He points out the fact that in answer to appellees' plea of contributory negligence, appellant alleged in a supplemental petition that immediately prior to the collision he was acting in a sudden emergency caused by the negligence of the "operators of the defendant's vehicle", not proximately caused by any act or omission of Smithey, and that, in the face of such emergency, Smithey used that degree of care which would have been used by a person of ordinary prudence under the same or similar circumstances. He concludes that the doctrine of sudden emergency was raised by the pleadings and evidence and that the court erred in failing to submit said issues to the jury.

In support thereof appellant further says that as he came around a curve on a hot night he was suddenly faced by the bright lights of a vehicle coming in his direction, which was the witness Layton's pickup pulling onto the highway from the south borrow ditch; that, as Layton's pickup came onto the highway, his bright headlights, high because of a heavy load on Layton's pickup, came more and more into Smithey's eyes; that there was further activity to his left caused by the Drury pickup moving onto the highway; that

there was a haze on Smithey's windshield; that when headlights struck this haze there was a glitter and, therefore, he concludes, the question of sudden emergency was raised and the court erred in failing to submit it.

The Center truck was equipped with what is known as saddle, or step, gasolene tanks. The flow of gasolene from either of two tanks was controlled by manually turning a handle. There was evidence that it was customary, and the proper procedure, to permit one tank to run almost dry; that when one tank began to "starve for fuel" the engine would "miss and pop" and the driver would then switch to the full tank and the engine would pick up gasolene from it. There was evidence that before the truck stopped the engine gave such symptoms of near emptiness and the truck driver made the customary effort to switch to the full tank, but for some unknown reason the switch "froze" and would not turn; that this was the first time the switch ever froze; that when this happened the truck was going slightly uphill and the driver started pulling over to the side of the highway; that he was able to drive partly off the main traveled portion of the highway but was unable to get the trailer completely off and the trailer was stopped partly on the main traveled portion of the highway. There was evidence from the truck driver and his assistant that, after the gasolene switch froze and the truck stopped, they placed around the equipment the usual flares and reflectors and then continued to try to free the stuck switch and that Center lighted a fusee "to wave the traffic by." There is also the testimony of persons who were strangers to the truck driver and his assistant and all parties, Jessie Layton and his daughter-in-law, Bertha Drury, that they were each driving a pickup truck east and arrived at the scene of the accident shortly before it happened; that they stopped near the stalled truck and Layton observed the headlights and the clearance lights burning on appellee's truck; that Center was waving a

freshly lit fusee, which caused Mr. Layton and Mrs. Drury to stop; that, after they stopped and offered assistance, Layton, who had parked on the paved shoulder to the right of the highway as he went east, started his pickup to the east staying on his shoulder; that he then saw Smithey, who was traveling west, come around a curve over 2,100 feet east of the point of collision. Layton testified that Smithey's car lights were on bright. Layton testified that he began blinking his lights and honking his horn; that after Smithey passed him, going west towards the rear of appellee's stalled equipment, Layton looked back and saw a fusee still burning. He testified that, in addition to the headlights and the clearance lights on appellee's truck, he also saw, before the accident, two reflectors on the rear of appellee's trailer and noticed a flare in the highway near the rear of appellee's trailer. Mrs. Drury had stopped her pickup behind Layton. She said she saw Riley Center using a fusee and saw the headlights on appellee's truck and, when she was leaving the scene, she passed the rear of appellee's trailer and saw one of its operators waving a fusee behind the trailer. Center and Borgfield testified to the effect that when they saw Smithey's automobile approaching Center ran toward Smithey waving a fusee and Borgfield waved a flashlight; that 30 to 50 yards east of appellee's trailer Center was forced to jump to the north and roll into the borrow ditch to keep from being hit by Smithey. They testified to the effect that they put out six flares at the distances required by law after the truck stopped.

Smithey could not testify. He necessarily depended upon two witnesses, neither of whom saw the accident. Highway patrolman Scoggins arrived at the scene about 30 minutes after the accident. The officer testified that he did not recall seeing any flares, reflectors or torches, or the like, when he arrived but that his investigation revealed that Center used a lighted fusee just prior to the accident and that he saw the ashes of a burned fusee at the scene. He testified concerning the physical facts he found at the scene of the accident, including the position of the trailer and Smithey's automobile and with reference to skid marks. He demonstrated by photographs that the trailer was partly on the main traveled portion of the highway. Appellant's other witness, Mr. Ross, also did not see the accident. The evidence indicates that the brakes on Smithey's automobile were not applied until its front wheels were 45 feet from the rear of appellee's trailer.

■ Appellant alleged that a sudden emergency was caused by the negligence "of the operators of the defendants vehicle" but he now contends that the testimony of his non-expert witness Ross, who was not at the scene when the accident happened, tends to show that the headlights of Layton's pickup caused a sudden emergency. Assuming for present purposes, without deciding, that the requested issues were material under the circumstances and that they were raised by the pleadings and evidence, we have concluded that the court did not commit reversible error by refusing to submit said requested issues.

Rules of Civil Procedure, rule 279 provides that failure to submit an issue shall not be deemed a ground for reversal of a judgment unless its submission in substantially correct wording has been requested in writing and tendered by the party complaining of the judgment. Rule 277 provides that special issues shall be submitted distinctly and separately. In Edwards v. Gifford, 137 Tex. 559, 155 S.W.2d 786, 788, our Supreme Court decided the question here presented. It called attention to statutes that, so far as they are here material, are now included in the rules mentioned. A reversal of the judgment was there sought because the court refused to submit a requested issue tendered along with other issues in one instrument. The court said:

"It has been repeatedly held by the courts of this State that it is not er-

ror for the trial judge to refuse to submit issues when they are all placed in a single instrument and are intermingled in such a way as to be confusing; and, further, that when issues are submitted in such manner, he is not required to search through the requested issues and submit those which are proper and refuse those which are improper. * * * If one or more of the special issues requested en masse should not be given, the court is justified in refusing to give any of them."

The following more recent cases are to the same effect. Davis v. Massey, Tex. Civ.App., 324 S.W.2d 242; Gowan v. Reimers, Tex.Civ.App., 220 S.W.2d 331, 337 and Walton v. West Texas Utilities Co., Tex.Civ.App., 161 S.W.2d 518, (Writ Ref.).

It is evident that one or more of the issues requested en masse should not have been given and, therefore, the court was justified in refusing to give any of them. It appears that requested issues 1 and 4 present different phases or shades of the same claimed act of negligence and that issue 4 was undisputed; that requested issue 7 was substantially submitted in special issue number 1 of the court's charge and that it was undisputed that there was room for defendants' vehicle off of the paved highway; that requested issue 13 was undisputed and that it was submitted in another form as issue 1 of the charge, the only difference being that said requested issue used the word "stall" while the issue submitted used the word "stop"; that requested issues 14 and 15 were also substantially submitted in issues 2 and 3 of the charge and that said requested issues were merely different shades of the issues submitted; that, likewise, requested issues 16 and 17 were substantially submitted in issues 1, 2 and 3 of the court's charge. Under the authorities cited, reversible error is not shown by failure to submit the requested issues on sudden emergency.

 Appellant complains of the admission in evidence of several pictures. They were made for the purpose of showing the situation that existed at the time of the accident and were relevant to speed and visibility. Some were admitted without objection. Others were objected to as "irrelevant and immaterial". There was evidence that the conditions were substantially the same when the pictures were taken as they were at the time of the accident. They were relevant and instructive. We think error is not shown. Richardson v. Missouri-K-T Rr. Co., Tex.Civ.App., 205 S.W.2d 819, 822, (Writ Dis.); Dofner v. Branard, Tex.Civ.App., 236 S.W.2d 544, (Ref. N.R.E.).

The court correctly refused to permit appellant to inform the jury that appellees were protected by liability insurance.

We have considered all of appellant's points. They are overruled. We conclude that reversible error is not shown. The judgment is affirmed.