Milton **KAINER**, Individually and d/b/a Kainer Truck Lines et al., Appellants,

v.

James W. **WALKER**, Appellee.

No. 16382.

Court of Civil Appeals of Texas.

Fort Worth.

Feb. 22, 1963.

Rehearing Denied April 12, 1963.

**250**

Bryan & Patton, Chilton Bryan, and Julietta Jarvis, Houston, for appellants.

Hill, Brown, Kronzer, Abraham, Watkins & Steely, Robert L. Steely and W. James Kronzer, Houston, for appellee.

MASSEY, Chief Justice.

This appeal resulted from a judgment for personal injury damages in behalf of James W. Walker, plaintiff, against Milton Kainer and the driver of his truck, one Robert Miles. For convenience we will hereinafter speak of Kainer as the defendant, with the observer to understand that both the defendants have appealed. The complaints of the two defendants are common and a decision thereof as to one would be the same as applied to the other.

The judgment is affirmed.

Plaintiff's injuries flowed from a vehicular collision in the City of Houston which occurred shortly before dusk when it was misting rain and when the streets were wet or damp. Point of the collision was the intersection of Capitol Avenue and Wayside Drive, the former being a street on which vehicular traffic flows both east and west, with traffic on Wayside flowing in a southerly direction only. Flow of the traffic was controlled by automatic signal-control lights. The same was true as to traffic at the intersection one block north, which was the intersection of Wayside with Harrisburg.

There is no question but that shortly prior to the time of the collision Robert Miles driving defendant's truck, started up at the Harrisburg-Wayside intersection, upon the change of traffic lights thereat which permitted westbound traffic to make a left turn to proceed south on Wayside, and turned and drove in a southerly direction toward and into the intersection of Capitol and Wayside. There is furthermore no question but that shortly prior to the time of the collision plaintiff was stopped at the east side of the Capitol-Wayside intersection, with his automobile pointing toward the west, and that upon a change of

traffic lights thereat which permitted such, plaintiff started his automobile and drove in a westerly direction on Capitol Avenue. Within the intersection the vehicles collided, the left front of defendant's truck coming into collision with the right rear quarter of plaintiff's passenger vehicle.

There seems to be no question but that there was a change of signal-control lights at the Capitol-Wayside intersection immediately prior to the time of the collision which indicated propriety for the flow through the intersection of traffic proceeding both east and west. There would seem to be little question but that the change of lights embraced such a change in condition that the red and "stop" light was to be observed by vehicle operators traveling in a southerly direction on Wayside, for there was nothing in the record indicating a malfunction of light controls. However, defendant's driver contended that when he entered the intersection the signal showed green, or "go", for southbound traffic.

Plaintiff started up from a position which was to the right of the center of Capitol, with space to his left for another vehicle between his own and the center of Capitol Avenue. Defendant's truck was proceeding in the lane next to the center of Wayside, immediately to the right thereof. Plaintiff's automobile was more than one-half way across the intersection when the collision occurred.

Issues upon proper lookout, failure to stop, and failure to yield right-of-way were clearly raised as applied to the acts and omissions of defendant. Raised, or in any event submitted, were contributory negligence issues upon plaintiff's lookout, failure to sound horn, driving into the intersection on a red light, speed, and failure to apply brakes. All these contributory negligence issues were answered in favor of plaintiff and against the defendant.

One main issue was submitted on the matter of defendant's negligence. It read: "Do you find from a preponderance of the evidence that at the time and on the occasion of the collision of December 31, 1959, that the driver of the Chevrolet truck failed to exercise that degree of care which would have been exercised by a reasonably prudent person in the exercise of ordinary care under the same or similar circumstances?" The jury found for plaintiff on this and the accompanying issue on proximate cause, and the judgment for the plaintiff was founded thereon.

In instances of judgment for the defendant on contributory negligence where the trial court has submitted a general issue on contributory negligence in tort cases, and where the defendant has alleged contributory negligence generally rather than specifically without exception thereto having been taken by the plaintiff, no reversible error has resulted of which plaintiff may complain even though he objects to the submission of the issue on the ground that it constituted a general charge or embraced a "global submission". The cases usually concede that the objection would be good had such an exception been filed and urged. Coleman County Electric Co-op. v. Agnew, 1954 (Tex.Civ.App., Eastland), 265 S.W.2d 911, affirmed by the Supreme Court in Agnew v. Coleman County Electric Cooperative at 153 Tex. 587, 592, 272 S.W.2d 877; Coleman v. Texas & Pac. Ry. Co., 1951 (Tex.Civ.App., Dallas), 241 S.W.2d 308, error refused; and cases cited as authority for the holding.

There seem to have been no opinions prior to this time in which the analogous question posed by the instant appeal has been passed upon, although it would be remarkably similar to that stated in the preceding paragraph. In this instance it was the plaintiff who alleged generally primary actionable negligence on the part of the defendant upon which plaintiff's right of recovery was grounded, and it was the defendant who failed to except thereto because of the generality. Defendant did object to the manner of submission because the issue constituted a global submission of general negligence in a special issue charge. The objection was overruled.

We confess that the question has given us concern. Usually when such is the state of the pleadings at time the court's charge is prepared a plaintiff will prefer to have separate issues, by which his theory of the case is submitted, inquire about whether those acts and omissions upon which a dispute has arisen constituted negligence and proximate cause. The defendant contends that such should have been the manner of submission in the instant case, and that reversible error lies in the failure of the trial court to adopt this method. Boldly, plaintiff's counsel agreed that the court could submit the case for the plaintiff by the manner which was adopted.

We have concluded that no reversible error appears. We believe that every reason considered and deemed logical in the cases by which it was ultimately concluded that a general issue submitting the question of a plaintiff's contributory negligence was not improper or erroneous, and if found in his behalf would support a judgment for the defendant, would have the same application to a case where the general issue submitted the question of the defendant's primary actionable negligence. Defendant's points of error by which its complaint is presented are overruled.

■ Complaining of the answer of the jury to the issue and its companion issue on proximate cause defendant contends that there was no evidence to support the answers returned, or even the submission of the questions, and also that the answers of the jury were against the great weight and preponderance of the evidence and the product of something other than reason. We have stated the general nature of the manner by which the collision occurred, and the acts and omissions on the part of defendant's driver. Clearly they could have amounted to negligence on the part of the driver, and by and through the driver to negligence on the part of the defendant. Evidence adduced upon the trial raised the issue or issues and the answers of the jury found adequate support in the evidence.

Defendant's points of error pertaining thereto are overruled.

■ Two specially requested issues of the defendant were refused by the trial court. These issues were:

Special Issue No. I. "Do you find from a preponderance of the evidence that James Walker failed to ascertain that the intersection of Wayside and Capitol Avenue was clear of motor traffic before leaving his stopped position on Capitol Avenue on the east side of Wayside Drive immediately before the collision in question?"

Special Issue No. L. "Do you find from a preponderance of the evidence that James Walker failed to ascertain that it was safe for him to drive into and through the intersection of Capitol Avenue and Wayside Drive before proceeding into such intersection immediately before the collision in question?"

Companion issues to the foregoing, upon the matter of inquiry as to negligence and proximate cause, were likewise refused.

We are of the opinion, and so hold, that the trial court did not err in refusing these specially requested issues. The inquiries therein posed other and various phases or different shades of the issue which was submitted upon the question of plaintiff's lookout. To have submitted the requested issues would have been to violate the mandate against such stated in Texas Rules Civil Procedure 279, "Submission of Issues".

■ We likewise overrule defendant's points of error by which it is asserted that plaintiff was guilty of contributory negligence as a matter of law, or, in the alternative that the jury's failure and refusal to find contributory negligence on the defendant's issues were against the great weight and preponderance of the evidence. We have reviewed the evidence and concluded that the matter of plaintiff's contributory negligence was an issue to be resolved by the jury, and that the answers, by which

such was resolved, were not against the great weight and preponderance of the evidence in the case.

■ Shortly after the time the collision occurred police officer Ford was dispatched to the scene to make an investigation in behalf of the City of Houston. Both drivers were present at the time of his arrival. After conducting certain investigation at the scene and interrogating both plaintiff and the defendant's driver, the officer asked these men to ride with him in retracing the route of defendant's truck for two or three blocks prior to the time of the collision. They did so. The officer had driven the police car, and made a left turn off Harrisburg, a block north of the scene (as defendant's driver had done), and proceeded to drive in a southerly direction on Wayside toward the intersection where the collision occurred. Defendant objected to the officer's testimony regarding findings and conclusions as the result of the test. Such was to the effect that if the operator of a vehicle started up, upon the change of the signal light one block north (as defendant's driver had done), made a left turn off Harrisburg and drove south toward the intersection of the collision, he would have to attain a speed in excess of 30 miles per hour in order to reach Capitol Avenue before the signal light thereat changed to the red and "stop" signal. In connection with the test there was an assumption that the sequence of the signal lights, one block apart, was so coordinated that the light was on the green and "go" signal at the intersection one block north (for a driver traveling in a westerly direction thereat) at the same time the signal light at the intersection of the collision was on the green and "go" signal for vehicular traffic traveling in a southerly direction on Wayside Drive. That this was so was not established by direct evidence.

When plaintiff's counsel started to introduce officer Ford's testimony about the test defendant's objection was interposed. The objection did not embrace the complaint that proper predicate for its reception had not been laid or that there was an assumption that the time sequence of the signal lights at the one intersection was correlated to the lights at the other. We believe there was no error in the admission of the officer's evidence. Furthermore, we are of the opinion that in a case such as this, the trial judge would have been at liberty in the exercise of his discretion to have concluded that the conditions were sufficiently similar to those existent at the time the defendant's driver traversed the route before the collision to warrant the reception of the evidence, and that any dissimilarity in conditions would go to the weight of the evidence rather than to its admissibility. 23 Tex.Jur.2d 291, "Evidence", sec. 192, "Admissibility of experiments conducted after act has occurred", and the article on this character of evidence in 17 Tex.Jur., p. 401, sec. 142, which it supplanted. Furthermore, in a review of the whole record we have arrived at the conclusion that the reception of the evidence, even assuming it to have been improper, did not constitute an error of law occurring during the course of the trial which amounted to such a denial of the rights of complainant as was reasonably calculated to and probably did cause the rendition of an improper judgment. T.R.C.P. 434, "If Judgment Reversed". For these reasons the point of error is overruled.

■ Over twenty years prior to the time of the trial the plaintiff had tuberculosis. It became an "arrested" case. The federal government began paying compensation on account thereof in the original amount of $38.95 per month over twenty years prior to time of the trial, but had been periodically increased until it became $61.00 per month. The government payments of this "compensation" were continuous and are still being received. However, the government had not had the plaintiff examined for over twenty years. Neither had the plaintiff certified to the government any fact concerning the state of his health. The payments so received by plaintiff amounted to a federal pension for debility.

Anticipating that defendant's council would be expected to interrogate plaintiff before the jury concerning the above matter plaintiff's counsel filed a motion *in limine* in which it was requested that counsel for the defense be instructed not to interrogate or in anywise apprise the jury concerning "The amount of government pension that James W. Walker receives through the Veterans Administration." The plaintiff further stated: "In this connection, your Plaintiff has no objection to the showing that he has a latent case of tuberculosis, which was diagnosed and recognized by the Veterans Administration, but it is immaterial and irrelevant to any issue in this case as to whether or not he receives any disability payments by reason thereof. Particularly, the amount of such disability payments are irrelevant and immaterial to any issue in the case, and constitute payments from a collateral source so as to not be evidentiary herein." The motion was granted, to which action the defendant took exception.

On appeal a point of error asserts error in the granting of the motion *in limine*. It is contended thereunder that defendant was denied the opportunity to offer evidence that plaintiff had been receiving disability compensation when it related to his antecedent physical condition and disability, a material inquiry in the case. Another point of error is of similar character, though with respect to the defendant's offer of evidence and its denial. In the case of Hawkins v. Missouri, K. & T. Ry. Co. of Texas, 1904, 36 Tex.Civ.App. 633, 83 S.W. 52, the trial court in a personal injury case had permitted the defendant, who obtained judgment, to bring out on cross-examination on pleadings of general denial the fact that plaintiff was drawing a pension from the United States Government of $12.00 per month. The court held that such action of the trial court did not constitute error. The court stated: "It appears that appellant's physical condition prior to the injuries became a material inquiry in the case, and, the federal pension having been granted upon the ground of debility in this respect, the testimony was pertinent."

A like holding is to be found in Dofner v. Branard, 1951 (Tex.Civ.App., San Antonio), 236 S.W.2d 544, writ ref. n. r. e., a case in which the trial court permitted interrogation on the matter of claim for government pension for and on account of antecedent disability and the percentage thereof. Amount of the pension did not seem to have been a matter of inquiry.

In "Shepardizing" the Hawkins case we fail to find where it has ever been cited as an authority on the point in question. The same is true of the Dofner case. Nevertheless we have no quarrel with the holdings in these cases. In the Hawkins case the language was that of Judge Ocie Speer, a very distinguished former member of this court, later on the Commission of Appeals. His holding was that it did not constitute error on the part of the trial court to "allow" the inquiry. On the asserted point of error in this case the question is whether it constituted error to "deny" the inquiry. The matter of inquiry had relation to antecedent physical condition and disability. It has been held that "The latitude which such testimony may take upon an issue of this kind rests in the sound discretion of the trial court, * * *." Western Produce Co. v. Folliard, 1937 (C.C.A., 5th Circuit), 93 F.2d 588. We agree with this statement. Applying the principle to the instant case we hold that reversible error is not made to appear. Furthermore, it is our interpretation of the motion *in limine* that the granting thereof did not inhibit inquiry on the cross-examination of the plaintiff about whether or not he was receiving a federal pension being paid to him on account of disability flowing from a tubercular condition, but only inhibited questions as to the "amount of government pension". It could only be the fact and the "extent" of the antecedent disability that would be matter in question in the case, in that such might operate to reduce the amount of damages, and questions relating to the amount received, or being

received because thereof, would not be a matter of proper inquiry. St. Paul Fire & Marine Insurance Co. v. Murphree, 1962, Tex., 357 S.W.2d 744.

In the offer of evidence, tendered on bill of exceptions, it was the fact of the payment of pension, or "compensation", that was tendered and not the amount. The offer was refused. As previously indicated, in the light of the whole record we fail to see where the refusal of the offer amounted to reversible error. The circumstances before us do not fit the ordinary case where an injured has received "compensation" from sources other than the wrongdoer in an injury action, as considered by the cases cited by Mr. Tom H. Davis in his article, "The Collateral Source Rule", 26 Tex. Bar Journal, No. 1, p. 31, January 22, 1963.

Other points of error relate to contentions that the amount of damages found by the jury was grossly excessive and against the great weight and preponderance of the evidence. The total of the damages, exclusive of medical expenses and automobile damage, as found by the jury was $27,300.-00. It was developed upon the questioning of two of the jurors on the hearing of the motion for new trial that the jury allowed $13,000.00 for plaintiff's loss of earnings to date of the trial and $10,800.00 for loss of earning capacity in the future. Only two jurors testified. Assuming we are bound thereby, it might be reasonably concluded that mental anguish and perhaps physical pain, past and future, was deemed by the jury to have been worth $3,500.00. Combining these figures would result in a total of $27,300.00. We do not believe that we are bound thereby, nor was the trial court. That two members of the jury at one stage of the deliberations agreed and arrived at the ultimate total amount of $27,300.00 by reason thereof would not mean that others of the jury did likewise. Or, even had they agreed on one or the other of the figures as the proper amount at one stage of their deliberations did not mean that their ultimate agreement to the $27,300.-00 answer returned would be based upon an amount previously agreed upon to an item comprising a part thereof. The material figure was the final one of $27,300.-00 to which all agreed, and individuals comprising the jury were free to change their ideas as to the values of various items going to make up the whole thereof for which the ultimate total was awarded. The defendant's contentions, therefore, are founded upon a premise which is fallacious. Viewing the evidence as a whole we are unable to say that the amount of $27,300.00 was grossly excessive or that the jury's finding was contrary to the great weight and preponderance of the evidence.

Defendant has presented thirty-three points of error. We believe that each of them is covered in our discussion. In any event we have severally reviewed them and severally overruled them.

The judgment is affirmed.