Luisa BRIONES et vir, Appellants,

v.

LEVINE'S, INC., Appellee.

No. 11476.

Court of Civil Appeals of Texas.

Austin.

May 17, 1967.

Rehearing Denied June 7, 1967.

J. Hubert Lee, Warner A. Hancock, Austin, for appellants.

Clark, Thomas, Harris, Denius & Winters, John Coates, John Goldsum, Austin, for appellee.

HUGHES, Justice.

This is a summary judgment case in which the trial court rendered a take nothing judgment against Mrs. Luisa Briones and her husband, Samuel Briones, in her suit against Levine's, Inc., appellee, for damages for injuries sustained in a fall in Levine's store, in April 1964, in Austin, Texas.

Viewing the evidence in a light most favorable to Mrs. Briones, as we are required to do, it is our opinion that genuine material issues of fact exist which preclude the rendition of a summary judgment.

Mrs. Briones was a customer in appellee's store. She was accompanied by her four year old daughter for whom she was shopping for a birthday present. The time was about noon. Appellee's store was well lighted. Mrs. Briones had in mind buying playwear or shorts for her daughter. She examined the goods on display on one table and not finding what she wanted went to a second table being preceded and shown the way by a saleslady of Levine's, Mrs. Janie Lagunas. Mrs. Briones testified to their positions at the second table as follows:

"She stopped on one side of the table, other side of the corner of the table, and I stopped on the other, and when she got the clothes that I gave her, that I had selected, she took them and then she went between me and the table, and that is when I had to step back."

In stepping back, Mrs. Briones came in contact with a lawnmower which was on the floor being displayed for sale. She fell on the lawnmower and in falling brought down racks of clothes which were standing nearby.

The custom in Levine's was that when merchandise was selected for purchase by the customer it was handed to the salesperson who carried it to the cash register where the merchandise and a sales slip were given to the cashier by the salesperson. This is perhaps the reason for Mrs. Lagunas walking by and in front of Mrs. Briones on the way to the cashier.

Mrs. Briones gave this testimony:

"Q Well, as you walked down that aisle, in the area that I am pointing at now, and I will put a red X there, as you got even with this red X, you were—you were even with the lawnmower, were you not? You were even with where the lawnmower was setting on the floor, weren't you?

A I could not see it, because there were many things in between and around the machine, and I just went straight to the table.

Q What was between where I have drawn this, here, and the lawnmower? What was in between that, to keep you from seeing the lawnmower?

A Hanging clothes, dresses.

\* \* \* \* \* \*

Q What was—Can you estimate the distance in feet, there was between the edge of the table here, and this clothes rack that you came in between, how many feet? How many feet was there for passage-way where you have drawn the red line, here?

A Enough for one person to go through That is why she was leading the way, and I was following her.

\* \* \* \* \* \*

Q As you walked past the corner of the table here, along the red line that you have drawn—I am going to draw an arrow and point it like so. Now, was that the direction—is that the direction you were facing as you walked past the corner of the table, between the table and the rack which you have drawn in, is that the direction you were facing as you walked past?

A Yes.

Q All right. And, the lawnmower was right in this area, is that right?

A Yes.

Q Now, what was the distance from the table, where you have drawn these two lines, two short parallel lines, on top of the table, what was the distance from the edge of the table here, to where you walked to back to the mower, can you say in feet, distance in feet?

A I just gave one step backwards and hit it.

Q Ask her how many feet from the edge of the table.

A I don't know, because I just stepped back so that the clerk could go in front of me, and I hit it.

\* \* \* \* \* \*

Q Now, from that table, what was the distance to the lawnmower?

A I only took one step backwards, and that is when I fell and I knocked down the clothes rack.

Q Where was the clothes rack, behind the lawnmower?

A. Yes.

Q How far was it behind the lawnmower, what distance was it behind the lawnmower?

A I do not know, because it was all knocked down, because I knocked it all down."

We believe the narrowness of the aisle and the proximity of racks of clothes prevent the legal conclusion that Mrs. Briones saw the lawnmower and fully appreciated the danger of falling over it or that, as a matter of law, she is charged with knowledge of such facts. These same facts are evidence of a dangerous condition not open and obvious concerning which appellee should have taken reasonable precautions to protect Mrs. Briones from harm.

We are also of the opinion that the conduct or action on the part of Mrs. Lagunas in passing between the table and Mrs. Briones causing her to step back and hit the lawnmower is some evidence of negligence of appellee, and that such negligence was a proximate cause of her injuries.

The judgment of the trial court is reversed and this cause is remanded for trial.

Reversed and remanded.