Luisa **BRIONES** et vir., Appellants,

v.

**LEVINE'S DEPARTMENT STORE, INC.,**
Appellee.

No. 11634.

Court of Civil Appeals of Texas.

Austin.

Dec. 18, 1968.

Rehearing Denied Jan. 15, 1969.

J. Hubert Lee, Austin, for appellants.

Clark, Thomas, Harris, Denius & Winters, John Coates, Barry K. Bishop, Austin, for appellee.

O'QUINN, Justice.

In a former appeal of this cause (415 S.W.2d 460, writ ref., n. r. e.) we remanded the case because there were material issues of fact precluding rendition of a summary judgment.

Upon return to the district court, and after trial before a jury, the court entered judgment on the verdict that appellant, plaintiff below, take nothing in her suit for personal injuries sustained when she fell backward over a power lawnmower displayed for sale in an aisle in the defendant's store.

From the judgment of the trial court, plaintiff appeals and assigns thirty points of error.

Appellant made selections of merchandise from a display table and stepped backward from the table at which she was standing. In stepping back, she tripped on the lawnmower sitting on the floor behind her and was injured by the fall.

The jury found that the lawnmower was *not hidden or concealed from appellant's view by hanging clothes, display racks, tables, or merchandise.*

In our previous consideration of this case we concluded there was a fact issue on whether the lawnmower was concealed or hidden from appellant's view by dress racks or merchandise across the aisle from the display table so that the danger might not have been open and obvious.

We found a further issue on whether the conduct of a saleswoman was negligence proximately causing the accident. In the record of the summary judgment proceedings it appeared that the saleswoman passed between appellant and the display table causing her to step back and hit the mower.

The jury found that the saleswoman was not attempting to proceed between appellant and the display table on her way to the cash register when appellant stepped back and tripped.

Appellant assails the judgment of the trial court with the argument that it was based upon the "no duty" doctrine, flowing from the jury finding that the lawnmower was not hidden or concealed, but that the judgment did not set aside the jury's findings in answer to special issues 4, 5, and 6, and to special issues 10 and 11.

In answer to special issue 4 the jury found that appellee "had a lawn mower on display in the aisle amongst the clothes on a clothes rack and immediately across from a merchandise display table, so close to said display table as to constitute a danger to customers similarly situated to [appellant] * * * making selections from the display table."

Under issues 5 and 6 the jury found "that placing of the lawnmower in the aisle amongst the clothes on a clothes rack and immediately across from the display table" was negligence and a proximate cause of the fall appellant sustained.

In answering special issue 10, the jury found that appellant "did not fail to keep a proper lookout for merchandise on display on the floor of the Levine's store and particularly for the lawnmower over which she fell." Although not required to, the jury answered issue 11 to find that failure to keep a proper lookout was not negligence.

At the request of appellant, the trial court found that the evidence was undisputed that when appellant stepped back from the display table and tripped on the lawnmower, she did not know the mower was there.

After a careful examination of the record, we conclude that our decision under the facts of this case is controlled by Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368 (Tex.1963).

■ The rule is that if the danger, in this case the lawnmower, is open and obvious and is known to the invitee, the occupier of the premises owes no duty to warn or protect. The reasoning is that there is no duty to warn the invitee of things she already knows, or of dangerous conditions so open and obvious that as a matter of law the invitee will be charged with knowledge and appreciation thereof. Halepeska v. Callihan Interests, Inc., supra; Harvey v. Seale, 362 S.W.2d 310 (Tex. 1962).

■ Appellee owed a duty to appellant, as a business invitee, to protect her against conditions of the store premises that would involve an unreasonable risk to her safety, the "danger of which would not be open or obvious to a person exercising ordinary care." Houston National Bank v. Adair, 146 Tex. 387, 207 S.W.2d 374 (1948).

■ The jury found that the lawnmower was not concealed or hidden, and that the failure of the saleswoman to warn appellant was not negligence. The fact that appellant tripped over a lawnmower in appellee's store and was injured as she fell backward does not establish liability. There must be evidence showing that in some way appellee was at fault and that the fault was a cause of her injury. The jury's finding that appellee created a danger by placing a hardware article, the lawnmower, in an aisle amongst displays of soft goods, such as clothing, in close prox-

imity to the display table cannot alter or increase the obligation imposed by the law upon appellee to protect or warn appellant only if the danger is not open and obvious. If the danger caused by the close proximity of the lawnmower to the display table was open and obvious, there was no duty to protect or warn appellant.

The jury's finding that placing the lawnmower close to the display table constituted a danger is not inconsistent with the finding that the lawnmower was not hidden or concealed. There was no issue to establish, and we find no facts suggesting, that the lawnmower, sitting on display in the aisle, was not open and obvious, either because of its presence in the aisle amongst clothes on a rack or because of its close proximity to the display table.

Appellant argues that "* * * the location of a lawnmower amongst ladies' dresses and children's garments is somewhat incongruous, and any danger created by its location with respect to the clothes or tables or other items in that area of the store would be less obvious to persons seeking to buy garments, and any dangerous condition created would very likely not be noticeable unless the attention of the customer was particularly drawn to it."

■■ The incongruity of placing hardware articles in a section of the store otherwise devoted to display of clothing will not of itself impose a duty to protect or warn against the danger thereby created if the presence of the hardware is open and obvious. The jury found that at the time and on the occasion the lawnmower over which appellant fell was not concealed or hidden from appellant's view by hanging clothes or other merchandise or display racks or tables located on the floor of the store in the immediate vicinity of the mower. Since the lawnmower was in no way hidden or concealed, whatever danger it presented was open and obvious. Appellee had no duty to call particular attention to it or to protect customers from tripping over it.

Appellant's points asserting error on this question are overruled.

Appellant contends that the trial court erred in admitting into evidence four photographs introduced by appellee attempting to show the interior of Levine's store as it existed at the time of appellant's accident. Timely objection was made at the trial and the point has been duly preserved for our consideration.

Appellant complains that the pictures were made some four years after the accident, did not accurately reflect the scene at the time of the accident, and were vouched for by the store manager, through whom the exhibits were offered, only to the extent that they were accurate "to the best of [his] memory."

The pictures to which appellant objected were offered by appellee through Levine's store manager who was manager also at the time of the accident. The store manager, at the request of appellee's counsel, had re-arranged a table and clothing rack in the store, and had placed a power lawnmower in the aisle or space between the table and the rack, in the manner he remembered these objects to be at the time of the accident. A professional photographer then took four pictures which a week later were offered in evidence at the trial.

The floor plan set up by the store manager for the purpose of taking the pictures represented, he testified, "* * * to the best of my knowledge * * * the way it was at the time of the accident." The lawnmower used for the pictures was borrowed for the occasion, but the manager testified that "* * * it was approximately the same size and the same type." The mower was powered with a Briggs and Stratton motor, had four wheels, a handle bar, and its base was approximately the same size as the mower over which appellant tripped and fell.

The record shows that the manager was in the store at the time appellant fell and

was one of the persons who assisted her to her feet immediately after the accident.

The manager testified that there was an open aisle on each side of the lawnmower which was on display on the floor between the display table and the clothes rack. It was his recollection that the distance from the lawnmower to the display table where appellant was standing before she stepped back and fell was four or five feet. The manager testified that the same floor covering, consisting of nine-inch asphalt tile squares, was in use on the occasion of the accident and when the pictures were taken. Under examination by appellant's counsel, the manager stated that he had placed the lawnmower for the photographer as nearly as he could "to simulate the time of the accident." The pictures disclose that the lawnmower as placed by the manager was more than four squares from the display table, apparently a distance of approximately three to three and one half feet.

The manager also testified to the location of other objects shown in the pictures which he stated were not so situated on the day of the accident. Certain clothes racks not near the lawnmower or the area in which the accident occurred were not rearranged for the pictures. The cash register had been relocated since the time of the accident. The display table, the lawnmower, and the clothing rack opposite the table were placed by the manager for the picture taking "in approximately the position they were in at the time of the fall," the manager said, "To the best of my memory."

During the trial a drawing of the store floor plan was placed on a blackboard for the jury to view. The manager testified, with the pictures before him, to differences between the drawing and the pictures. He testified that the tables and racks were arranged the same way in the diagram and in the pictures "except that the tables drawn on the board may be extended a little bit further than they actually are in comparison to the entrance of the store." The manager said that "according to the diagram, the table might be drawn a little wide," and that "the tables and racks are not as wide as shown in proportion."

It is settled in Texas that posed pictures are admissible when the proper foundation is laid by testimony that the objects portrayed are the same or similar and that they are faithfully represented as to their relative positions. Changes, even substantial changes, will not necessarily exclude a photograph where the changes are explained so that the picture will give a correct understanding of the condition existing at the time of the accident and will afford practical instruction. Texas Employers Ins. Ass'n v. Agan, 252 S.W.2d 743 (Tex.Civ.App., Eastland, writ ref.).

It appears that in some jurisdictions the courts formerly looked with disfavor upon the admission of photographs of an attempted reproduction of a scene showing the position of movable objects according to the contention of the party offering the picture as recalled by the party's witnesses. 27 A.L.R. 913 (1922) The majority rule, which is followed in Texas, is contrary. Texas Employers Ins. Ass'n v. Agan, supra; 27 A.L.R. 913, 916; 19 A.L.R.2d 877.

To be admissible the pictures need not be verified, even by the photographer who took them. It is only necessary that some witness having knowledge of the facts testify that the pictures are substantially correct. Dofner v. Branard, 236 S.W.2d 544 (Tex.Civ.App., San Antonio, writ ref., n. r. e.), and cases cited.

Appellant contends that the pictures do not accurately portray the location of the lawnmower, particularly in relation to the display table and the clothing rack. There was a conflict in the evidence as to the location of these objects with respect to each other. A conflict in the evidence as to accuracy of the pictures does not render them inadmissible, since their correctness becomes a question of fact for the jury. Dofner v. Branard, supra.

Appellant urges that the fact the pictures were taken four years after the accident renders them inadmissible. Considerable time elapsing between the date of the accident and the taking of the pictures will not prevent admission of the pictures if they accurately show conditions at the time of the incident. 2 McCormick and Ray, Texas Law of Evidence, sec. 1465, and cases cited, fn. 47.

With respect to posed pictures, the following statement is made by McCormick and Ray:

"* * * if there is substantial dispute as to the accuracy of the scene portrayed the judge should have a discretion to exclude the posed picture unless the opposing party is given an opportunity to prepare a picture representing the scene as testified to by his witnesses." 2 McCormick and Ray, Texas Law of Evidence, p. 321, sec. 1465.

Appellant testified that she walked to the display table, at which she was later standing when she stepped back and fell, with the saleswoman walking ahead. Appellant described the aisle between the table and the clothes rack as "narrow," so narrow that she "had to draw [her] * * arm in in order to make it through because there was some clothes hanging" on a double rack. The clothes rack, appellant said, was on her right as she approached the display table walking behind the saleswoman, and she had to hold her arm so she "wouldn't spill the clothing."

Appellant contends that the aisle between the clothes rack and the display table was so narrow that the lawnmower, displayed in the aisle amongst the clothes, was not observed by her and was so close to the display table that when she "gave one step backwards" she tripped and fell on top of the machine. She testified that after the saleswoman finished making out the ticket, following appellant's selection of merchandise at the table, the saleswoman "was coming around" between appellant and the table to go to the cash register.

It was then, appellant testified, "* * * I stepped back to make room for her, and that's when I fell back." Appellant said she did not know the lawnmower was there until she got up, and that if the lawnmower had not been there she would not have fallen as there was "nothing on which I could fall" except the mower.

The jury found, as we observed earlier, that the saleswoman was not "attempting to proceed between Mrs. Briones and the display table on her way to the cash register."

The store manager testified that when he went to help appellant to her feet, she was "sitting on the lawnmower" but not near the clothes rack, which he said was separated from the machine by an aisle. The pictures introduced by appellee over objection support the testimony of the manager as to the position of the lawnmower in relation to the clothes rack on one side of the mower and the display table on the other side of the machine.

Appellant offered no pictures, staged or otherwise, to rebut the testimony offered by appellee or to demonstrate appellants' contention that there was only one aisle between the clothes and the table and that the aisle was narrow, so narrow that her arm brushed the clothes as she walked toward the table. In the course of an extensive interrogation of the store manager, the following dialogue between counsel for appellee and the manager occurred:

Counsel: "Q Are you willing for [appellant's counsel] * * * to go out with a photographer—what time does the store close at night?

"A At six o'clock, no, at tonight eight o'clock.

"Q And take pictures of anything he wants to take?

"A That's his privilege."

The record does not reveal any response from counsel for appellant. At that time pictures to which appellant objected had

been admitted in evidence. Appellant's objections, which the court overruled, were stated in the following language:

1) "* * * I object to the photographs being given to the witness for the purpose of testifying therefrom because they do not represent the conditions at the time that the accident happened, but actually they are as testified by the witness a rearrangement of the latest store conditions to attempt to make it conform as to what he now purports to testify what it looked like then. I don't think it can be stated as to accurately represent the store as it was then, and therefore I submit and object to his testifying from it and to the introduction into evidence."

2) "I have one more objection * * * and that is; providing that photograph of a rearrangement was prepared by [the store manager] * * * and the fact that with the assistance of his counsel it amounts to leading testimony."

3) "I object * * * to the introduction of this photograph on the grounds that it is apparently 'arranged to the best of my knowledge' and it would be prejudicial if it is not an accurate representation. If it were an accurate representation we would be glad to accept it."

■■■ The trial court has considerable discretion as to the admission of photographs. On review the question is not whether the trial judge acted wisely in allowing the pictures to become a part of the evidence. The question is whether the court abused his discretion. Texas Employers Ins. Ass'n v. Agan, supra, and authorities cited 252 S.W.2d 743, 748-9.

■■■ The test is whether the evidence as to accuracy is satisfactory and in accordance with the recollection of the witness as to the position of the objects portrayed. If the witness through whom the pictures are offered testified that they are substantially correct the photographs will be admitted and their correctness becomes a question for the jury. Dofner v. Branard, supra; 9 A.L.R.2d 899, 907, sec. 3.

■■■ The store manager testified repeatedly that the pictures in question portrayed the objects in the accident scene to the best of his knowledge as they were at the time of the accident. The manager was at the scene of the accident immediately after appellant fell and while she was still sitting on the lawnmower. He testified he attempted to arrange all objects for the pictures approximately in the position they were at the time of the fall to the best of his recollection. Any differences between the pictures and the accident scene were pointed out and explained when the pictures were introduced.

The objections made to the pictures go more to the weight of the evidence than to its admissibility. Admission of the pictures was a matter for the trial court's discretion, which is not shown to have been abused. The points of error urged as a result of the trial court's action in admitting the questioned pictures are overruled.

Although we have not enumerated the thirty points of error, we have reached and overruled all points essential to disposition of the case by which judgment of the trial court is affirmed.

The judgment of the trial court is in all things affirmed.

Affirmed.

HUGHES, Justice (dissenting).

Depicted here is one of four similar pictures which the trial court admitted in evidence over objections of appellants as set out in the opinion of Associate Justice O'Quinn.

It is my opinion that the trial judge abused his discretion in admitting these photographs in evidence. They were taken four years after the event. They were based upon the testimony of Mr. Lapinsky, store manager for appellee, that they correctly represented the scene at the time Mrs. Briones fell "as best you can remember as they were that day," he (Mr. Lapinsky) was "not trying to say this is exactly like it was that day," he was asked to "put it (the lawnmower) as well as you could, about where it was that day," that he located the fixtures to the "best of my memory," that the floor plan was arranged as of the time Mrs. Briones fell "to the best of my knowledge" or "as well as you can recollect" or "as you can recall."

In its brief appellee states, "The photographs were introduced for the purpose of showing the open and prominent location of the lawnmower, in rebuttal to appellants' allegations that it was concealed among hanging clothes."

The protection afforded litigants by the oaths taken by witnesses is worth very little if such material and highly prejudicial evidence as these photographs is admitted on the basis of their verification as attempted by Mr. Lapinsky.

I do not consider the offer made in the progress of the trial to Mrs. Briones' counsel to go to the store before its 8 p. m. closing and take pictures was a fair offer. It was made at an unseemly time. It did not include permission to arrange the store as it was when Mrs. Briones was injured.

If I am correct in concluding that appellants were entitled to judgment based on the verdict of the jury, then the above error, as I see it, becomes immaterial.

As reflected by the opinion of Associate Justice O'Quinn this case involves the question of whether appellant has shown that appellee was under a duty to protect her from the injury which she received when she stepped back from the merchandise counter and fell on a lawnmower and that this duty was breached. It is the contention of appellee that she did not discharge this burden because the jury having found that the lawnmower was not concealed or hidden from her view by the hanging clothes, merchandise, display racks or tables the lawnmower and its attendant dangers were open and obvious. The jury also found that this lawnmower was so placed "amongst the clothes on a clothes rack" so close to the table where Mrs. Briones was selecting her purchases as to constitute a danger to her. There is no contention that these findings conflict.

My problem is to determine whether the finding that the lawnmower was not concealed or hidden from the view of Mrs. Briones requires us to hold that the lawnmower and its attendant dangers were open and obvious to her. My conclusion is that it does not.

The Supreme Court has held that a plaintiff-invitee cannot recover if he knows of the condition, realizes the danger, and appreciates the danger, or is charged in law with such knowledge, realization and appreciation. Wesson v. Gillespie, Tex. 382 S.W.2d 921 (1964).

Since Mrs. Briones did not see the lawnmower, she could not have realized and appreciated the danger attending it. She must be charged, as a matter of law, with knowledge that the lawnmower was where it was and a realization and appreciation of the danger connected with it.

The location of the lawnmower when Mrs. Briones fell backward over it is, in my opinion, determinative of this legal question. If it was where the picture herein shows it to have been, I would have no difficulty in charging Mrs. Briones, as a matter of law, with all the ingredients of "no duty." See the remarks of Supreme Court Justice Greenhill in Assumed Risk, Baylor Law Review, Vol. XVI, p. 111 @ 118, Southwestern Law Journal, Vol. 20, p. 1 @ 13.

We have findings here that while the lawnmower was not hidden or concealed from the view of Mrs. Briones, it was

"amongst" the clothes and so located as to be dangerous to her as she shopped.

I would hold, under these circumstances, that since this dangerous condition existed and Mrs. Briones was injured as a proximate result of it that she, as a matter of law, should not be charged with realization and appreciation of the dangers incident to such dangerous situation.

In Rackley v. Model Markets, 417 S.W. 2d 89, Tex.Civ.App., San Antonio (1967) n. r. e., the Court reversed a summary judgment for defendant store where a customer fell over a pair of shoes in the aisle the Court saying.

"It cannot be said that the shoes upon the floor were so open and obvious that Mrs. Rackley was charged, as a matter of law, with knowledge and appreciation thereof so as to entitle appellee to judgment under the 'no duty' doctrine. Scott v. Liebman, 404 S.W.2d 288, (Tex.Sup. 1966); Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368 (Tex.Sup.1963). In her testimony, she denied any actual knowledge of same prior to her fall. Furthermore, she testified that she did not see the shoes on the floor because her attention was upon those in the racks at eye level. Under the record before us there is no basis for holding, as a matter of law, that Mrs. Rackley should have anticipated that shoes would be on the floor in tthe aisle."

These shoes were not hidden or concealed from the customer, yet they were not open and obvious as a matter of law.

Paraphrase the language of Judge Barrow in Model Markets, supra, and substitute "lawnmower" for "shoes" and the analogy is near perfect.

In Price v. Minyard's Food Stores, Inc., 424 S.W.2d 51, Tex.Civ.App.Dallas (1968) n. w. h., the Court reversed a summary judgment for the stores, saying:

"The accident occurred in a wide aisle. A number of large boxes were stacked in a row close to the center, but not exactly in the center of the aisle. On one side of the row of stacked large boxes there was space enough left for the cart to be pushed through. On the other side there was space enough for a person to walk through, but not space enough to push the cart through. The large boxes in the row were stacked waist high or higher. Mrs. Price saw them. But close to the end of the row of large boxes a small box, eight or ten inches high, was lying on the floor by itself. She did not see this small box. She stopped at a display counter to pick up some picnic supplies. She was on the narrow side of the aisle past the row of large stacked boxes. She stepped back from the display counter, not knowing that the small box was in the space back of her. She tripped and fell backward over the small box, sustaining serious injuries.

Mrs. Price says that she did not see the small box because it was hidden from view by the stack of larger, taller boxes. She came down the narrow side of the aisle, saw the stack of large boxes, but the small short box beyond them she did not see because it was out of sight as she approached the picnic supply counter. She was not looking at the floor. She was looking at the merchandise. At the time of the accident she had picked up some paper plates from the picnic counter and was carrying them in her arms. She stepped back before turning around, intending to go to the candy counter on the other side of the aisle. She had not been down that aisle before on this particular day."

While Mrs. Price says the box over which she tripped was hidden from view it is apparent that she could have seen had she looked. This, however, did not justify a summary judgment against her.

It is my opinion that the trial court erred in rendering judgment for appellee on the verdict of the jury. I would reverse and

render judgment for appellants on the verdict of the jury; in the alternative, I would reverse and remand this case.

I, respectfully, dissent.