Luisa BRIONES et vir, Petitioner,

v.

LEVINE'S DEPARTMENT STORE, INC.,
Respondent.

No. B–1390.

Supreme Court of Texas.

July 30, 1969.

Rehearing Denied and Dissenting Opinion
Oct. 22, 1969.

J. Hubert Lee, Austin, for petitioner.

Clark, Thomas, Harris, Denius & Winters, John Coates and Barry K. Bishop, Austin, for respondent.

SMITH, Justice.

This suit for personal injuries received from tripping backwards over a power lawn mower, was brought by petitioner, Mrs. Luisa Briones, hereafter denominated plaintiff, against respondent, Levine's Department Store, Inc., hereafter denominated defendant.

In a prior trial of this cause, the trial court granted a summary judgment for defendant. The Court of Civil Appeals reversed and remanded, holding that, viewing the evidence in the light most favor-

able to plaintiff, the allegations in the deposition testimony of plaintiff "* * * are evidence of a dangerous condition not open and obvious concerning which appellee should have taken reasonable precautions to protect Mrs. Briones from harm." The Court of Civil Appeals also held that there was evidence of negligent conduct on the part of Mrs. Lagunas, one of defendant's employees, and that such negligence was a proximate cause of plaintiff's injuries. 415 S.W.2d 460. In the second trial, the trial court entered a judgment on the verdict for defendant. A divided Court of Civil Appeals affirmed. 435 S.W.2d 876. We affirm upon a ground properly raised, but not discussed in the opinion of the Court of Civil Appeals.

The facts are these. On April 24, 1964, plaintiff and her four year old child went shopping for clothes at defendant's store. Upon entering the store, after several immaterial occurrences, a clerk, Mrs. Lagunas, spoke with plaintiff, and lead her to the display table which contained the items in which plaintiff was interested. It is plaintiff's testimony that as plaintiff approached the display table on her left, she brushed against some clothes which were hanging on a clothes rack on her right. In other words, she was following Mrs. Lagunas down an aisle, bordered by the display table on her left and the clothes rack on her right, each of which ran somewhat parallel to the other. Mrs. Lagunas walked past the table, walked to her left for a step or two, and turned to face the table. Plaintiff walked to the far end of the display table where she turned to her left to face the merchandise. After plaintiff made a purchase, Mrs. Lagunas "* * * was standing at the other edge and she was writing me the ticket and when she finished writing me the ticket * * * [she] was coming around and I stepped backward to make room for her, and that's when I fell back." Plaintiff "* * * gave one step backwards * * *" and fell over and on top of a power lawn mower.

The testimony of defendant's manager, Mr. Lapinsky, is that the lawn mower was in between the display table and the clothes rack, with an aisleway between the display table and the lawn mower and an aisleway between the lawn mower and the clothes rack. To corroborate this testimony, and similar testimony from Mrs. Lagunas, defendant introduced four photographs, over objection, into evidence.

In the trial of this cause, the following special issues were submitted and answered as follows:

"SPECIAL ISSUE NO. 4

"Do you find from a preponderance of the evidence that the Defendant had a lawn mower on display in the aisle amongst the clothes on a clothes rack and immediately across from a merchandise display table, so close to said display table as to constitute a danger to customers similarly situated to Plaintiff, making selections from the display table?

"Yes.

"If you have answered 'Yes' to the preceding special issue then answer the following special issue, otherwise do not answer it.

"SPECIAL ISSUE NO. 5

"Do you find from a preponderance of the evidence that the placing of the lawn mower in the aisle amongst the clothes on a clothes rack and immediately across from the display table, if you have so found, was negligence?

"Yes.

"If you have answered 'Yes' to the preceding special issue then answer the following special issue, otherwise do not answer it.

"SPECIAL ISSUE NO. 6

"Do you find from a preponderance of the evidence that the negligence of the Defendant, if any, in placing the lawn

mower in the aisle amongst the clothes on a clothes rack, and immediately across from a merchandise display table, if you have so found, was a proximate cause of the fall sustained by Plaintiff?

"Yes.

"SPECIAL ISSUE NO. 7

"Do you find from a preponderance of the evidence that at the time and on the occasion in question the lawn mower over which plaintiff, Luisa Briones, fell was concealed or hidden from her view by hanging clothes or other merchandise or display racks or tables located on the floor of the store in the immediate vicinity of the law mower?

"It was not so concealed or hidden."

In another special issue,[1] the jury refused to find that Mrs. Lagunas attempted to proceed between Mrs. Briones and the display table. The jury also refused to find that Mrs. Lagunas was negligent in failing to warn plaintiff that the lawn mower was behind plaintiff. The jury did find that plaintiff was free of contributory negligence.

The Court of Civil Appeals affirmed the judgment of the trial court upon the ground that whatever danger the lawn mower presented was open and obvious; therefore, defendant had no duty to protect plaintiff therefrom, or to warn plaintiff thereof. Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368 (Tex.Sup.1963). The major portion of the opinion dealt with the admissibility of four photographs which were taken by defendants some four years after the accident. The Court of Civil Appeals held that "[t]he objections made to the pictures go more to the weight of the evidence than to its admissibility." The dissenting Justice in the Court of Civil Appeals would have held that under

the facts, Mrs. Briones could not be charged in law with knowledge of the lawn mower; therefore defendant could not be protected by the "no duty" doctrine. Also, the dissenting Justice would have held that the trial judge abused his discretion in admitting the four photographs. We do not reach these issues.

■ In the reply brief to the application for writ of error, defendant asserts the following cross-point, which has been preserved in his motion for judgment *non obstante veredicto*, and in his "Appellee's Brief" in the Court of Civil Appeals. In this cross-point, defendant contends:

"The trial court and court of civil appeals correctly entered judgment for Respondent, because there was no evidence to support the jury answer to Special Issue No. 4, such issue being the only ground of negligence found on the part of Respondent."

■ We sustain this contention. In submitting special issue number four, plaintiff undertook to establish: (1) that the lawn mower was "amongst the clothes on a clothes rack"; and (2) that the lawn mower was "immediately across from a merchandise display table". Having submitted two elements conjunctively, the law is clear that both elements must be proven by a preponderance of the evidence in order to support an affirmative answer from the jury. Turner v. Texas Company, 138 Tex. 380, 159 S.W.2d 112, 118 (Tex.Com. App.1942, opinion adopted). After a thorough search of the record, we find no evidence that the lawn mower was "amongst the clothes on a clothes rack."

Defendant's witnesses, Mr. Lapinsky and Mrs. Lagunas, testified unequivocally that there was an aisleway between the lawn mower and the clothes rack. In fact, even plaintiff's attorney gave emphasis to the

---

1. "SPECIAL ISSUE NO. 1
   "Do you find from a preponderance of the evidence that Defendant's sales clerk was attempting to proceed between Mrs.

Briones and the display table on her way to the cash register?
   "No."

distance between the lawn mower and the clothes rack in his examination of Mrs. Lagunas:

"Q  You are saying there was quite a distance between those clothes and that lawn mower, is that right?

"A  Yes, sir.

"Q  So actually anybody could go between that lawn mower and those clothes quite freely, couldn't they?

"A  Yes, sir.

"Q  That put the lawn mower a little closer to the display table, didn't it?  The lawn mower was far way from the clothes rack, but it was closer to the display table, wasn't it?

"A  Sir, it's been a long time.  I can't remember that.

"Q  But you do remember that it was far away from the clothes rack?

"A  (Witness nodded head.)"

Mr. Lapinsky and Mrs. Lagunas also testified that after plaintiff fell, she was sitting on the lawn mower and was not even near the clothes rack.  Besides the undisputed testimony of defendant's witnesses as to the distance between the lawn mower and the clothes rack, there is absolutely no testimony from plaintiff which would place the lawn mower "amongst the clothes on a clothes rack".  The only "evidence" which places the lawn mower "amongst the clothes on a clothes rack" is a drawing which was submitted by plaintiff in the application for writ of error in this Court.  The drawing is entitled "Petitioner's Exhibit No. 1"; however, the drawing was not introduced into evidence in the trial court and is not supported by any evidence in the record.

In oral argument before this Court, plaintiff's attorney asserted that the jury was entitled to draw all reasonable inferences from plaintiff's testimony, one of which would be that the lawn mower was "amongst the clothes on a clothes rack". We do not agree.  In Firestone v. Sims, 174 S.W.2d 279, 284 (Tex.Civ.App.1943, writ ref'd), the Court quoted with approval from 32 C.J.S. Evidence § 1044, p. 1129:

"A verdict or finding may be based on inferences fairly drawn from the facts in evidence.  An inference cannot be based on surmise or speculation, and is without probative force if inconsistent with undisputed or clearly established facts."

Plaintiff's testimony that when she started toward the display table, there was a narrow aisle formed by the display table and the clothes rack, and that later she backed up from the far end of the display table onto a lawn mower, raises no more than a surmise or speculation as to the location of the lawn mower in relation to the clothes rack.  See 23 Tex.Jur.2d, Evidence § 69, p. 111 and cases cited therein.

Also, it is the general rule in this state that an inference may not be based upon another inference.  Rounsaville v. Bullard, 154 Tex. 260, 276 S.W.2d 791, 793–794 (1955); Texas & N. O. R. Co. v. Grace, 144 Tex. 71, 188 S.W.2d 378, 381 (1945); Texas and P. R. Co. v. Brown, 142 Tex. 385, 181 S.W.2d 68, 73 (1944). This is exactly what has happened here. Before the jury could infer that the lawn mower was "amongst the clothes on a clothes rack", it would have to infer that the clothes rack ran the full length of the display table, since there was no testimony to that effect.  As stated in Wells v. Texas Pac. Coal & Oil Co., 140 Tex. 2, 164 S.W. 2d 660, 663 (1942), " ' *  *  * Even though the original presumption be indulged, the law does not permit the pyramiding of one assumption upon another because an ultimate fact thus arrived at is too conjectural and speculative to support a judgment.  *  *  * ' "

In view of our holding on defendant's cross-point, we do not reach the other issues in this cause.

The judgments of the Courts below are affirmed.

POPE, Justice (dissenting).

I respectfully dissent. Plaintiff, Luisa Briones, has lost her case in three courts, each one of which has rendered judgment against her for a different reason. The trial court rendered judgment upon the jury verdict. The court of civil appeals affirmed the judgment for the defendant because it concluded the danger presented by the mower in the aisle was open and obvious. This court has now held that there was no evidence to support the jury finding on special issue number four, which was favorable to the plaintiff. In my opinion, considerable direct evidence and lawful inferences support the essential findings against defendant, Levine's, and this same evidence defeats Levine's contention that the danger to which Mrs. Briones was exposed was open and obvious.

The jury found that Levine's "had a lawn mower on display in the aisle amongst the clothes on a clothes rack and immediately across from a merchandise display table, so close to the said display table as to constitute a danger to customers similarly situated to Plaintiff, making selections from the display table." The jury found that placing the mower at that place was negligence and a proximate cause of Mrs. Briones' fall. The jury refused to find that she was contributorily negligent in failing to keep a proper lookout. The jury found that the mower was not concealed or hidden. The trial court made two unattacked findings, which the undisputed evidence supports: that Luisa Briones received no warning about the mower and she did not know it was behind her when she stepped back from the display table.

This court has concluded that there is no evidence to support the jury's answer to special issue number four, because there is no evidence that the lawn mower was "amongst the clothes." However, this is not the real question asked in the issue.

The real question was whether or not the mower was placed in the aisle so close to the display table as to be a danger to customers making selections from the display table. The question also described the aisle as one which was formed by a display table on one side and a clothes rack on the other side. There is evidence to support the jury's answer to the real question asked. Mrs. Briones testified that after making her selection at the display table, "I gave one step backwards * * * I fell on top of the machine." She was asked how many steps she took and answered, "This foot I moved back, and that is when I fell."

Mrs. Briones entered the double doors to Levine's during the daytime on a Saturday. She walked south through an aisle which extended from the door. The aisle from the doorway was formed by movable racks on which wearing apparel was hanging. Mrs. Briones walked some twelve to fifteen feet inside the door and stopped to examine some merchandise on a table. Mrs. Lagunas, a clerk, then approached Mrs. Briones. Mrs. Briones told the clerk what she wanted and the clerk led Mrs. Briones down the first aisle which extended to the west side of the store. That aisle was the place of the accident. The north side of the aisle was formed by a rack on which clothes were hanging. The south or opposite side of the aisle was formed by a table on top of which clothes were displayed. Between the clothes rack and the display table, there was a rotary lawn mower standing in the aisle. The clerk led Mrs. Briones to the south side of the aisle, the location of the display table; and at the west end of that table, Mrs. Briones made her selection, handed it to the clerk, stepped back and fell on top of the mower.

There is other evidence from which an inference can be drawn that the mower was dangerously close to the display table. Mrs. Briones described the aisle. She said, "Yes, it was a real narrow aisle * * * I had to draw my arm in in order to make it through because there was some clothes

hanging * * * Yes, when I went to the second table I had to hold my arm so I wouldn't spill the clothing." This testimony, up to now, has received too little attention from the courts. In reaching its conclusion that the aisle was spacious and wide, this court relies on testimony from defendant's clerk, defendant's manager and the staged photos taken four years after the event. The court seems to ignore Mrs. Briones' testimony quoted above. The jury could rightfully believe Mrs. Briones instead of the defense evidence.

We come now to the other question. Was the danger open and obvious? The court of civil appeals concluded that the danger was not hidden or concealed and, therefore, it was open and obvious. Not so, at all. "Hidden" and "obvious" are at opposite poles. Between them lies a great area of potential negligence. I take it that a storekeeper is under a duty to exercise ordinary care to keep aisles reasonably safe for passage by customers. That is their purpose, and particularly is this true when display counters and racks of clothing are purposely arranged in a manner to draw the customer's attention. Customers pick up articles of clothing or take them from hangers and frequently step back to hold them up to light and for examination. Customers seldom pivot in place on the ball of the foot upon leaving a counter, and to take "one step backwards" is rather an expected procedure. Customers were expected to stand in front of the display table to make their purchases just as Mrs. Briones did. The object, which it is argued was open and obivous, was behind Mrs. Briones. It was not an object a shopper would expect to find in the children's clothing department. Even if Mrs. Briones had turned around before she took one step backwards, the top level of the motor on which she fell may momentarily have escaped her vision since it was no higher than her knees. I find difficulty in holding that an object which a store sets behind the spot where a customer ordinarily will be looking in an opposite direction, is open and obvious.

See Walgreen-Texas Co. v. Shivers, 137 Tex. 493, 154 S.W.2d 625, 630 (1941).

I would reverse the judgments of the courts below and render judgment for plaintiff upon the jury verdict.

STEAKLEY, REAVLEY and McGEE, JJ., join in this dissent.