Kathy Diane Price TANNER and
Highlands Insurance Company,
Appellants,

v.

BDK PRODUCTION COMPANY, INC.,
et al., Appellees.

No. 13–83–023–CV.

Court of Appeals of Texas,
Corpus Christi.

April 30, 1984.

Vernon N. Reaser, Jr., Robert Cheshire, Jack W. Marr, Kelly, Stephenson, Marr & Lewis, Victoria, for appellants.

Richard L. Scheer, H. Dustin Fillmore, Fillmore & Camp, Fort Worth, Tom M. Callan, Dallas, for appellees.

Before NYE, C.J., and YOUNG and UTTER, JJ.

## OPINION

NYE, Chief Justice.

This is an action for wrongful death brought by the survivors of Clayton Tanner against Enserch Exploration, Inc. (Enserch). Trial was to a jury which found that the negligence of Enserch proximately caused the injury resulting in Tanner's death to the extent of 80%, while decedent's own negligence contributed to the occurrence to the extent of 20%. Enserch filed a Motion to Disregard the Jury Verdict and Motion for Judgment Non Obstante Veredicto. The trial judge granted Enserch's motions, disregarded the special is-

sues relating to liability and granted judgment denying appellants' recovery against Enserch Exploration, Inc. The survivors have appealed this judgment.

Clayton Tanner, at the time of his death, was employed by Air Equipment Rental Company (Air Equipment) on a casing crew. Enserch was the lease operator. Air Equipment had been hired by Enserch to run casing at a well site they operated near Hallettsville. BD & K Production Company (BD & K) was the company that had been hired by Enserch to perform the drilling services. On the day of the accident, Air Equipment, in preparing to run the casing, connected their equipment to the mud system on the drilling rig in the customary manner. Tanner was apparently holding the end of a flexible hose which had been placed in the end of a joint of casing. He was waiting for the driller to begin pumping the mud so that he could fill the joint casing with drilling fluid. This particular drilling rig had two mud pumps, which were owned by BD & K. The standby pump which the driller initially turned on apparently did not operate properly, so the main pump was engaged. When this pump was turned on, apparently pressure from inside the mud line was so great that it caused the mud line to "fly up," striking Tanner on the head. He subsequently died from injuries received as a result of this accident. The plaintiff alleged various theories of negligence on Enserch's part in their pleadings, but submitted a general negligence issue to the jury, which they answered in favor of Tanner's survivors.

Edward Vaughn, the production supervisor and on-site "company man" of Enserch at the time of Tanner's death, testified that "lost circulation material" had been put into the mud system. "Lost circulation material" is a substance put into the mud system which is designed to prevent the drilling mud from escaping into the subsur-

face formations. This is termed "losing circulation." This material acts as a kind of sealant and changes the viscosity of the mud to a degree.[1] Appellants' theory of the case is that the introduction of the "lost circulation material" and other material into the system necessitated by a prior blow-out at the well site created a dangerous condition on the premises. They claim that, had the crew known that lost circulation material was present in the mud and that there were pump problems, precautions could have been taken to prevent the accident. They assert that, by not informing Tanner of the presence of lost circulation material and other materials in the mud, Enserch created a hazardous condition involving an unreasonable risk of harm to Tanner which proximately caused the accident resulting in Tanner's death. The parties stipulated that both BD & K and Air Equipment were independent contractors on the occasion in question.

■■■■ Appellants seek to recover against Enserch on a premises liability theory. The legal duty of an owner/occupier of land is to use reasonable care to make and keep the premises safe for the use of business invitees. In order for appellants to recover from Enserch, they must prove:

1. that Enserch had actual or constructive knowledge of some condition on the premises;

2. that the condition posed an unreasonable risk of harm to Tanner;

3. that Enserch did not exercise reasonable care to reduce or eliminate the risk; and

4. that Enserch's failure to use such care proximately caused Tanner's injuries.

*Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292 (Tex.1983). The Supreme Court has abolished the "no duty doctrine" and has determined that premises liability cases

---

**1.** The parties disagree as to the amount of change in the viscosity of the mud the "lost    circulation material" actually produces.

should be tried upon general negligence principles. *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d at 295; *Parker v. Highland Park, Inc.*, 565 S.W.2d 512 (Tex.1978). The long-standing rule that a plaintiff must prove the existence and violation of a legal duty owed to him by the defendant to establish negligence liability remains intact. Three elements must be proven in order to establish liability for negligence: (1) a legal duty owed by one person to another, (2) a breach of that duty, and (3) damages proximately resulting from the breach. *Abalos v. Oil Development Company of Texas*, 544 S.W.2d 627 (Tex.1976). The basic duty of a landowner/occupier to business invitees is to exercise ordinary care to maintain the premises in a reasonably safe condition. *Rosas v. Buddies Food Store*, 518 S.W.2d 534 (Tex.1975); *Seideneck v. Cal Bayreuther Assoc.*, 451 S.W.2d 752 (Tex.1970). An employer is generally not liable for the acts or omissions of an independent contractor or the independent contractor's servants. *Gaspard v. Cox*, 583 S.W.2d 877 (Tex.Civ.App.—El Paso 1979, writ ref'd n.r. e.). An owner/occupier of land, however, may become liable for injuries sustained by an independent contractor where the employer assumes control of the work. *J.A. Robinson Sons, Inc. v. Ellis*, 412 S.W.2d 728 (Tex.Civ.App.—Amarillo 1967, writ ref'd n.r.e.).

■■ In order to sustain the judgment of the trial court in granting appellees' motion for judgment notwithstanding the verdict and motion to disregard jury findings, we must determine that there is no evidence to support the jury's findings. *Meyer v. Mack Sales, Inc.*, 645 S.W.2d 493 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.). We will review the record in a light most favorable to the jury's findings, considering only the evidence and inferences which support those findings, rejecting any evidence to the contrary. *Williams v. Bennett*, 610 S.W.2d 144 (Tex.1980); *Dodd v. Texas Farm Products Co.*, 576 S.W.2d 812 (Tex.1979).

Appellants alleged in their pleadings specific incidents in which Enserch was negligent, including: (1) selection of the method of filling the casing with mud, (2) failing to require that mud lines be cleaned out prior to the commencement of the casing crew operations, (3) failure to require that the safety of the mud system be checked before the casing crew began using the fill-up line, and (4) failure to warn Clayton Tanner that the mud was highly viscous.

The basis of their argument on appeal, however, appears to be that Enserch breached a duty owed to Clayton Tanner by failing to warn him of the presence of "lost circulation" material and other materials in the mud. They assert that the use of this material created a condition which, without the knowledge of its presence, created an unreasonable risk of harm to him. Appellants further seem to suggest that there was evidence in the record to show that Enserch, through the presence of the "company man" on-site, interfered with the efforts of BD & K when the pump malfunctioned. The "company man" was customarily present until after the casing crew obtained the circulation of mud through the casing.

■ The initial question presented is whether the defendant created or maintained a condition on the premises involving an unreasonable risk of harm. Under the appellants' theory, we must determine whether there is any evidence to show that the presence of "lost circulation" material in the mud system or the actions of the company man on-site created a dangerous condition on the premises. The undisputed evidence was that, on this particular site, they were losing returns. Lost circulation material was put into the mud system to stop the lost returns. Carol Gibson, the tool pusher for BD & K testified that about ten out of one hundred wells that he had worked on had utilized lost circulation material in the mud in order to prevent lost returns. David Shelton, a member of the casing crew, testified that he had been in situations before where lost circulation material was being used. He said the equip-

ment that the casing company owned and used was supposed to be able to handle all types of mud. Shelton further indicated the casing crew handles their duties in the same way regardless of the viscosity of the mud. He indicated that the crew had not been informed that lost circulation material was being used. If he had known, Shelton claimed he "would have gotten out of the way and got the other people out of the way." Roy Curlee, also on the casing crew, testified that the job would be done the same way with or without the presence of lost circulation material unless informed of a problem with the pump or something else. He claimed that if those conditions existed, one would have to chain down the hose or get off the floor. He testified that he was not informed of lost circulation material in the mud system. He indicated that generally the lines are cleaned on the drilling rig and mud pumps before the operations begin. Ralph Church testified that he was not informed that lost circulation material was being used. If he had known, he said that he might have paid more attention to it. He claimed that the crew usually does not know what is in the mud, but one can usually tell if there is lost circulation material in it. It appears from the record that Enserch was aware of the presence of "lost circulation" material in the mud, but that the mere presence of lost circulation material did not, in and of itself, pose a dangerous condition on the premises requiring Enserch to warn of its presence. There was no testimony elicited that on jobs of this nature it was customary or ordinary for the owner to notify the casing crew that lost circulation material was being used. Carol Gibson, the tool pusher for the drilling company, was aware that lost circulation materials were being utilized. We hold that the failure of Enserch to warn of the introduction of lost circulation material into the system was not negligent conduct on the part of Enserch because the introduction of this substance did not pose a condition on the premises involving an unreasonable risk of harm to the invitees.

▮ Neither was the failure to warn Tanner of any problems with the pump evidence of negligence on Enserch's part. The record shows that the pumps in question were owned and operated by BD & K, the independent contractor. The owner/occupier is not liable for damages where the danger arises out of the activities which are conducted by and under the control of the independent contractor. *Abalos v. Oil Development Company of Texas*, 544 S.W.2d 627 (Tex.1976); *Shell Chemical Company v. Lamb*, 493 S.W.2d 742 (Tex. 1973).

Evidence was introduced that the company man, Edward Vaughn, was on site during the operation. Carol Gibson testified that Vaughn told them at one point to hurry up so that the threadlock which had been put on the float shoe would not set. Vaughn's presence at the site does not, of itself, show that he in any way interfered or took control over the independent contractor's duties on the job site. In order for Enserch to be liable under this theory, appellants would have to present evidence that Vaughn actually interfered in some way with the operation of the independent contractors. There is no evidence that Vaughn in any way controlled the driller's action in engaging either the standby or main pumps. In fact, Paul Henry, the driller on the job, testified that, when he was not getting mud to the floor with the standby pump, he told the derrick man to switch over to the main pump. He indicated that, when one pump was not running, the customary thing to do was to engage the other pump. He indicated that, on that particular job, he was also the person who had ordered the derrick man to put "lost circulation" material into the mud. He claimed that everybody used it.

▮ There is no evidence in the record to show that the company man interfered in the performance of the duties of the drilling company or the casing crew. The evidence shows only that, at one point, he told the toolpusher to "hurry up."

There was evidence that the well in question had previously "blown out." The driller knew that they were re-entering an old hole. He claimed that they were involved in "milling operations" for more than three weeks because there was "a lot of junk there." However, no evidence was introduced that the process of re-entering an old hole or the presence of "junk" in a well created a condition on the premises which posed an unreasonable risk of harm to an invitee.

Appellants' brief does not point to other areas of the record which would show that the owner/occupier maintained any type of condition on the premises which would cause an unreasonable risk of harm to the independent contractors; and in our review of the record, we find none.

■■■■■ Even if the evidence supported the appellants' proposition that a duty to warn Tanner was owed, they nonetheless failed to prove that the presence of lost circulation material in the mud proximately caused the accident. In order to impose liability on a party, the plaintiff at trial has the burden of proving that the defendant owed a legal duty that was breached, proximately resulting in the injuries suffered by plaintiffs. *Oldaker v. Lock Construction Co.*, 528 S.W.2d 71 (Tex.Civ.App.—Amarillo 1975, writ ref'd n.r.e.). Proximate cause must be proven as a vital fact by probative evidence. The elements of cause in fact and foreseeability combine to establish proximate cause. *Clark v. Waggoner*, 452 S.W.2d 437 (Tex.1970). Cause in fact means that the negligent act or omission was a substantial factor in bringing about the injury and without which no harm would have been incurred. *Missouri P.R.R. Co. v. American Statesman*, 552 S.W.2d 99 (Tex.1977). In *Missouri P.R.R. Co. v. American Statesman*, 552 S.W.2d at 103, the Supreme Court described foreseeability as satisfied by a showing that "the actor as a person of ordinary intelligence should have anticipated the danger to others by his negligent act." Again, we will review all of the testimony favorable to the appellants to determine if there is any evidence whereby the jury could properly have inferred that the failure to warn of the presence of lost circulation material was the proximate cause of the accident.

Carol Gibson, the toolpusher for BD & K Drilling, testified that Enserch got the permit for the well and was responsible for building the mud pits and designing the mud program. All of the equipment utilized on the site was the property of the independent contractors except the mud and the casing itself. He testified that, on the date of the accident, there was an employee of Enserch on site. He described the mud as being heavily saturated with lost circulation material. He did not recollect Enserch telling the casing crew that lost circulation material was being used. He was asked about the possible reasons for the failure of the mud to come out when the driller activated the pump, indicating that there were two possibilities: either the line was plugged up for some reason, or a valve that should have been open was closed. He also indicated that pressure could cause the hose to "fly up." According to Gibson, on the day of the accident, Air Equipment had tied their equipment into BD & K's equipment. They turned on the "standby" pump owned by BD & K, but they were not getting mud to the floor, although they were getting mud in the pit. Gibson said that he shut the standby pump down and went to check on the problem. When he was down there, the driller turned on the main pump. The accident happened when the main pump was engaged. Gibson testified that the mud guns were opened and the valves on the gun were open. He said that the valves were opened to the gun, but that they could have been plugged up by lost circulation material.

David Shelton, who was a member of the casing crew, testified that, at the time of the accident, the valve on the end of the hose was open. He said that Clayton Tan-

ner did not do anything out of the ordinary on that day. The flow line had not been chained down, but, at that time, it was not customary to chain down the flow line.

Ralph Church, also on the casing crew of Air Equipment, testified that the flow line was hooked up on this occasion in the customary manner. He said that, had they known lost circulation material was in the mud, they would have "paid more attention to it." He said he had seen lost circulation material clog in the guns in the past, but on this particular occasion, he did not know if they were clogged with lost circulation material.

If the Court assumes that the failure to warn of the use of lost circulation material created an unreasonable risk of harm that should have been foreseen by the appellees, the appellants still had the burden to show that, but for their failure to warn, the accident would not have occurred. Again, we will review the record in a light most favorable to the jury verdict.

The evidence at trial showed that the possibilities for the surge might have been a clog in the valve, a closed valve, or the fact that the standby pump had lost its prime. A witness for the defense, Paul Henry, the driller, suggested the third alternative, but because we are considering evidence favorable to appellants, we will not discuss his testimony. Carol Gibson testified that, when pressure hits the line, it has a tendency to fly up.

A review of the testimony favorable to plaintiffs' case reveals no evidence tending to show that the presence of lost circulation in the mud posed a dangerous condition on the premises which necessitated a duty on the part of Enserch to warn the deceased.

■ Even if the evidence in the record would show that Enserch was negligent in their failure to warn the deceased, the appellants failed to prove that such failure to warn of the presence of substances in the mud was the proximate cause of the occurrence.

The evidence shows, at most, only a *possibility* that the system may have been blocked and the *possibility* that the cause of the blockage was the presence of materials in the mud system. From these two possibilities, the jury would have had to draw the further inference that there was a blockage, caused by the lost circulation materials in the system, which then caused the end of the hose to fly up and hit Tanner in the head. To reach this point the jury would have had to stack one inference upon another. The law does not allow stacking of one presumption upon another. *Briones v. Levine's Department Store, Inc.*, 446 S.W.2d 7 (Tex.1969). If the Court should indulge presumption that the system was clogged, the law will not permit us to pyramid the various assumptions to support a judgment. *Briones v. Levine's Department Store, Inc.*, 446 S.W.2d at 11.

We hold that the plaintiffs failed to prove that the presence of lost circulation material in the mud created an unreasonable risk of harm to Tanner, as an invitee on the premises. Plaintiffs further failed to prove that the failure to warn of the presence of lost circulation material in the system was a proximate cause of the occurrence.

Appellants assert as their second point of error that the trial court erred in disregarding the jury's answer to Special Issue No. 3 in which the court found that the conditions and activities that caused the death of Clayton Tanner were not inherent in the performance of the work which Air Equipment was hired to perform on the occasion in question. We overrule appellants' second point of error for the same reasons stated hereinabove.

The judgment of the trial court is affirmed.