While Article 5473, Vernon's Ann.Civ. St. gives a materialman a lien upon an entire lease for work done upon one well, Oil Field Salvage Co. v. Simon, 140 Tex. 456, 465, 168 S.W.2d 848, these findings will not support the judgment either in contract or estoppel.

The motion for rehearing is overruled.

### ALAMO CAS. CO. v. STEPHENS.

#### No. 10148.

Court of Civil Appeals of Texas.
Austin.

June 10, 1953.

Rehearing Denied July 1, 1953.

Herman Glosserman, San Antonio, and Hart, Brown & Sparks, by J. H. Hart, Austin, for appellant.

E. M. Grimes, Taylor, for appellee.

ARCHER, Chief Justice.

This suit was filed by A. Z. Stephens, the owner of a night club building situated on the highway one-half mile north of Jarrell, Williamson County, Texas, against Alamo Casualty Company, appellant, on a policy of insurance issued by appellant alleging a total loss of the building. Appellant defended on the grounds of arson and that the structure was not a total loss within the adjudicated meaning of the term.

Trial was had with the aid of a jury, and on findings that the building was a total loss, that it would cost more than $20,000 to replace it, and that appellee did not knowingly set the building on fire or cause it to be set on fire, a judgment was entered for appellee for $5,000, interest, and for the return of the unearned premium.

The appeal is before this Court on eight points assigned as error and are that the evidence is legally insufficient to sustain the finding of total loss, and that the uncontradicted evidence is that a substantial part of the structure was not damaged by fire, in permitting Harrison, a witness, to state that there was no substantial part of the structure that a person could reasonably use if they were to try to replace the building; there was no competent evidence to sustain

the jury's finding of the cost to replace or repair the building; in admitting estimates of the court of replacing a new structure because only a part of the old building would have to be replaced; in holding inadmissible testimony reflecting appellee's character and deportment, since one of appellant's defenses was that appellee knowingly caused the insured structure to be burned in order to collect the insurance; in holding inadmissible testimony that appellee knew that the Fire Department of Georgetown would respond to a call for help and appellee refused to call or permit a call; and finally in admitting answer of witness Fort to the 21st written interrogatory propounded by appellee.

The insured building was a one-story concrete or tile blocks resting on a concrete foundation 62 x 75 feet, sunk a foot or more to the rock, and rising 14 inches above the surface. In constructing the building it was necessary to make a considerable fill, and a large quantity of material was hauled for a distance of 17 miles and a concrete slab with reinforcing steel mesh was poured and smoothed to get a slick finish at a cost stated by appellee in one instance to be from $3,300 or $3,400 and on the trial of the case to be about $1,500.

After the fire the concrete floor was there but cracked and broken, portions of the walls were standing, and evidence was had concerning such as to usefulness or value in building, rebuilding or restoring the structure to its condition prior to the fire.

Special Issue No. 1 is as follows:

"Do you find from a preponderance of the evidence that as a direct result of the fire plaintiff's club building was a total loss?"

The answer of the jury was "Yes," and in connection with the submission of this issue the jury was instructed that by the term "total loss" was meant such destruction as that after the fire there remained standing in place no substantial remnant thereof which a reasonably prudent owner uninsured, desiring to restore the building to its original condition, would utilize as a basis of such restoration.

The defendant objected to the submission of this issue because there was no admissible evidence sufficient to sustain an affirmative answer, and that the uncontradicted evidence was that a substantial part of the building remained unimpaired and that the evidence was wholly insufficient to sustain an affirmative answer.

■ The issue correctly submitted the fact issue and the accompanying definition of total loss was in keeping with the approved method of submitting the issue and defining total loss. Republic Insurance Co. v. Hale (Tex.Comm.App.), 128 Tex. 616, 99 S. W.2d 909.

Fred Harrison, a witness called by plaintiff (appellee), testified as to his residence, acquaintance with the structure, and that he was in the hardware business, that he sold the land on which the building was later constructed by appellee, and as to the contour of the premises; that he knew of the fire, and had been to the scene since the fire, and in answer to a question of what was there could be used, stated:

"In my judgment, what it cost to take it away would be fully equal to what the worth it would be, or over."

The witness further testified that some of the walls were standing which could be taken out and used but that by the time the expenses were paid he would rather start with a new place; that the concrete floor was cracked, broken and too rough to dance on; that the building was used as a night club. On cross-examination Mr. Harrison testified concerning telephone connections and that he did not think the fill and floor slab would have cost $3,500; that the slab was not usable for a dance floor; that he would not use the same foundation.

George Favers, called by plaintiff, testified that he was engaged in the lumber business in Jarrell, resided in Georgetown, and commuted daily between the two towns; that he knew the appellee, had business dealings with him, was familiar with the property and the construction of the building and of the fire. That subsequent to the fire he made an investigation of the premises, examined the tile blocks, that some

could have been cleaned and used, that the cost would be equal to that of a new block, that he would not use the foundation in putting a building back, that the floor slab was broken and buckling and gave an estimate as to the cost of materials to replace the building; that he was familiar with the cost of the construction of the original building, and identified some pictures as representing the premises after the fire.

Plaintiff's exhibit No. 3 is inserted herein:

There were other pictures reflecting different angles and positions of the premises after the fire which we do not think necessary to insert.

On cross-examination the witness testified as to the building, its foundation, excavation and fill, size and type of construction, and that the cost of the foundation was around $1,400.

The witness gave further testimony as to telephone connection, water tanks, other buildings near the same.

■ The jury saw, observed and heard the testimony of the witnesses, saw the exhibits and resolved the fact issue in favor of the plaintiff and we believe the finding of the jury is supported by the record that the building insured by the fire policy was a total loss from the fire entitling insured to recover on the policy on that basis. Republic Insurance Co. v. Hale, supra.

■ We believe the jury's finding as to the cost to repair or replace the insured structure is reasonably supported by admissible competent evidence.

The witness Favers testified as to his business, that he participated in constructing the building, that he furnished most of the material used, that he went to the site, saw the standing parts of the building, and that there was no usable part left that he could use or add to, and his estimate as to the cost was $21,422.14, and this is the amount the jury gave as the cost to repair or replace the building.

The appellant did not offer any testimony as to the cost to repair or replace the building or as to the extent of the building remaining in place or value thereof, but on cross-examination questioned witnesses in this connection and contends that essential part of the structure, that is, the fill, foundation and some tile, was not damaged by the fire.

Article 6.13, Insurance Code, V.A.T.S., in part provides:

"A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be a liquidated demand against the company for the full amount of such policy."

■ Appellant complains of the admission of certain testimony by witness Harrison as follows:

"Q. * * * Now, then, with respect to whether or not there is any substantial portion of the A. Z. Stephens club building there that a person could reasonably use if they were to try to replace that building, state whether or not there is any substantial portion there that—

"Mr. Hart: We object to it as calling for a conclusion of the witness. That is a question for the jury to determine after it gets the facts.

"The Court: Judge, I believe I will overrule the objection—

"Mr. Hart: Note our exception.

"The Court: —to the particular question asked.

"Q. All right; state what is there. Immediately after the fire, now, let's—immediately after the fire was there anything—what was there that could be used in rebuilding that building in the same state, in its original state?

"Mr. Hart: Our exception goes to this question somewhat different from the original one.

"The Court: Yes, sir.

"A. I just answer it from my experience in building myself. You have had two fires—

"Mr. Hart: If the court please, that is not responsive to the question.

"The Court: Yes, I will sustain that objection. Just regard the question he asked and answer it.

"A. Well—

"The Court: He asked you what was there that could be used.

"A. In my judgment, what it cost to take it away would be fully equal to what the worth it would be, or over; that is my idea of it."

No objection was directed to the last answer of the witness, or motion made to strike it.

We do not believe that the testimony was inadmissible, or at any rate its reception under the circumstances does not constitute reversible error.

Appellant takes the position that the jury's finding as to the cost to repair or replace the insured structure is not supported by sufficient competent evidence. We overrule this contention.

Witness Favers, whose testimony we have hereinabove set out in some detail, testified that he was familiar with the building and site, having participated in constructing the building, and furnished the material, except fixtures and plumbing, and furnished a list of the items necessary to restore the building, and the prices, and that when he went to the site to see what looked like might be used, he did not see any part of the building that was usable to leave and add to, and that he would not reconstruct on the same foundation.

The appellant objected only because the list was not admissible and not material and did not move that such list and testimony be withdrawn.

Walter V. Fort, by deposition, testified that he as agent issued the policy involved in this case, testified in part without objection that he inspected the ruins and that the foundation was cracked, had holes in it and that it would be impracticable to repair it or restore it to the condition in which it existed before the fire.

Appellant's sixth point is directed to the action of the court in excluding certain testimony reflecting appellee's character and deportment.

The appellant alleged as a defense that appellee had committed arson.

By deposition Mrs. Marie Bridger, an employee of Mabel Webb, the operator of the night club, was asked by attorney for appellant:

"Q. State whether or not during the time you worked for Mabel Webb at the club you saw A. Z. Stephens when he was intoxicated; and if so state how A. Z. Stephens acted and what character of language he used when he was intoxicated."

Objection was made to the question because it was irrelevant, immaterial and had no bearing on the case.

The attorney for appellant stated, in reply to a question from the court, that the testimony sought was to show the character and conduct and probability of commission of the offense.

The objection was sustained.

The answer of the witness was set out for the bill of exception and is as follows:

"A. I couldn't say that he was drunk because I didn't know him well enough. If he would beat a woman I would think he would be drunk. He must have been drunk or he wouldn't have beat her. That is the way it looks to me.

"Mr. Hart: We next offer in evidence the 19th interrogatory. I do not want to infringe on the court's ruling on his objection; so I will show you the interrogatory and the answer. If he cares to object, of course—

"Mr. Grimes: Oh, yes; same objection that I offered to a similar question a while ago.

"Mr. Hart: We will also offer the twentieth.

"The Court: Judge, I believe I will sustain the objection to that one also.

"Mr. Hart: Note the exception. Direct interrogatories 19 and 20 and the answers of the witness, Marie Bridger, thereto were offered by the defendant, plaintiff's objection was sustained, and defendant excepted." (The questions and answers referred to are here set out as follows.)

"Q. State whether or not while you were employed at the club you saw and heard any altercations or quarrels between A. Z. Stephens and Mabel Webb; and if you did see or hear such altercations or quarrels, describe how each of them talked and acted at said times. A. They fought and cursed each other for everything on Wednesday night before the place burned on Tuesday the next week. He came to

the room and I had to make him quit pulling her hair and beating her. It started that night in the club with them cursing each other and then the fight took place where we all lived, later that night.

"Q. State whether or not during the time you were employed at the club you saw A. Z. Stephens strike Mabel Webb; and if so, describe how Stephens and how Mabel Webb acted on said occasions. A. Yes, sir, I did see him strike Mabel Webb. They both were just mad. She said he had stole her money. They both were drinking. Which he did go behind the bar and take her money out of the cash register. He said he didn't steal it, he just took it so she wouldn't lose it. That night is when the laws came to the club. I didn't see him strike her at the club but at home I did. I guess that would be the only way that I saw them act out there."

We do not believe the court erred in excluding the proffered testimony.

The testimony raised no more than the fact that appellee, when drunk, was abusive to women but does not tend to prove that he knowingly set the building on fire.

In Williams v. Rearick, Tex.Civ. App., 218 S.W.2d 225, 229, the Court stated the rule to be:

"In testing the sufficiency of the evidence to support the finding, the evidence must be considered most favorable to appellee; but, if the evidence shows that a particular result may possibly have occurred by reason of several different causes, and it is not more reasonably probable that one of the causes was operative rather than the others, a finding of causal relationship between the result and a particular cause cannot be sustained. * * * A presumption of fact cannot rest upon a fact presumed, or in other words, one presumption cannot be based upon another presumption nor an inference of fact upon other inferences. * * * Facts may be established circumstantially, but the circumstances themselves must be shown by direct evidence, and cannot be inferred from other circumstances; * * *."

The judgment of the trial court is affirmed.

Affirmed.