**ROYAL INDEMNITY COMPANY,**
Appellant,

v.

**David HUME, Administrator of the Estate of Adolfo Mireles, Deceased, Appellee.**

No. 15023.

Court of Civil Appeals of Texas,
San Antonio.

March 1, 1972.

Delno J. Grosenheider, House, Mercer, House & Brock, Austin, for appellant.

Hume & Hume, David Hume, V. F. Knickerbocker, Eagle Pass, for appellee.

CADENA, Justice.

Plaintiff, David Hume, administrator of the estate of Adolfo Mireles, deceased, filed this suit to recover under an accidental death insurance policy. Defendant insurer, Royal Indemnity Company, appeals from a judgment, based on a jury verdict, awarding plaintiff $5,000.00, the face amount of the policy, plus $2,233.25 interest, $610.00 penalty and $2,500.00 as attorney's fees.

In answer to the first three special issues the jury found that the death of Mireles (1) resulted from accidental bodily injuries (2) directly and independently of all other causes, and that (3) a heart attack or heart condition did not contribute to the death.

Appellant presents twelve points contending that the verdict lacks support in the evidence and one point complaining of the admission of the testimony of Dr. Harry Kaback concerning the cause of decedent's death. We consider first the point relating to the admission of the doctor's testimony.

Appellant asserts that the trial court erred in admitting the doctor's testimony ". . . for the reason that when his testimony is considered as a whole it does not meet the test of reasonable medical probability." Appellant's brief fails to direct our attention to any portion of the record which reflects that it objected to the evidence, or moved that the evidence be stricken, for the reason presented in the point now under consideration. Nor was this claim of error incorporated in appellant's motion for new trial, although appellant states that the point is germane to the third assignment of error in its motion for new trial. This assignment complains of the admission of the doctor's answer to a hypothetical question ". . . over the objection that said hypothetical question contained facts not in evidence before the Court and no proper predicate had been laid by Dr. Kaback to answer the hypothetical question." This assignment does not embody the complaint here raised by appellant. We cannot consider the point concerning the admission of Dr. Kaback's testimony. Rules 320, 321, Texas Rules of Civil Procedure.

■ In passing on appellant's "no evidence" points we shall consider only the evidence, and the inferences from such evidence, which support the jury findings. Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex.L.Rev. 361, 364 (1960).

Mireles, a member of the volunteer fire department of the City of Eagle Pass, died while participating in a fire drill during the evening of September 9, 1963. He had already participated in one drill that night, but volunteered to participate in the second drill when a member of the crew scheduled to engage in the second drill could not be located. During the second drill Mireles was assigned the duty of inspecting the fire hose, after it had been laid, and to remove any kinks which he might find in the hose.

About ten or fifteen minutes after the second drill had begun, one of the firemen found Mireles lying unconscious in the street between the curb and the fire hose, about one foot from the curb. There was a bruise, marked by swelling and discoloration, in the area of his right temple. After mouth-to-mouth resuscitation had failed to revive him, he was taken to the hospital in a truck. At the hospital, an oxygen mask was placed over his face. About 30 or 45 minutes later, Dr. Raul Montemayor arrived at the emergency room and, without removing the oxygen mask, placed a stethoscope on various parts of the decedent's body. According to the undisputed testimony, this was the extent of the examination conducted by Dr. Montemayor, who then pronounced Mireles dead. According to the hospital records, Mireles was "dead on arrival." From the time that he was found lying on the street, Mireles did not speak, nor did anyone detect any bodily movement of any kind.

One of the witnesses testified that blood was "coming" from the right corner of decedent's right eye.

During the drill, the water pressure in the hose at the pump was 150 pounds per

square inch, while at the nozzle of the hose the pressure was 125 pounds per square inch. In order for a man to remove kinks from the hose, it is necessary that he bend over and pick up the hose. When a kink is removed from a hose subjected to the pressure detailed above, the hose may "pull" or "kick" with a force sufficient to knock down even an experienced fireman. There was water in the street along which the hose had been laid. No one saw Mireles between the time that he left the truck to inspect the hose and the time that he was found lying in the street. No one saw him fall.

At the time of his death, Mireles was 51 years old, 68 inches in height, and weighed 140 pounds, with no evidence of a bulging midriff. His sister, with whom he had lived for the 25 years immediately preceding his death, testified that he had never been ill during that time and had never consulted a physician. On the evening of his death he came home from his regular employment as a painter and ate supper. When he left for the fire station there were no marks on his face, did not complain of feeling ill, and was in good spirits. The fireman who saw him at rather close range when he volunteered to participate in the second drill testified that he was in good spirits, did not complain of physical discomfort, and had no marks on his face.

In answer to a hypothetical question, Dr. Kaback stated that Mireles probably died as a result of a blow to the head. He based this conclusion on the presence of the swelling and discoloration in the area of the right temple. He stated that swelling in the area of an injury results from the diffusion of blood and other bodily fluids from the fine capillaries, and that if Mireles had suffered a heart attack as the result of which he fell " . . . and injured himself, there would not be any swelling . . . . " due to the absence of sufficient blood pressure as the result of the heart attack. He further testified that when a person faints he usually leans forward and will "sag downward," so that in

most cases he will not be hurt as the result of falling to the ground, since his fall is not a violent one. He stated: " . . . I would say, everything is probable without an autopsy, but I would say 60 head blow, 40 heart attack. That is my sincere feeling. I always feel that it's possible it was a heart attack."

Dr. Kaback testified that, in his opinion, neither disease nor bacterial infection contributed to the death of Mireles. Appellant did not specifically plead any other exclusionary provision of the policy. See Rule 94, T.R.C.P.

■ In view of the circumstances showing the application of violent external force to the body of Mireles, and taking into consideration the testimony of the doctor that a collapse due to a heart attack was unlikely to produce the bruise on the face of Mireles, we cannot say that there is no evidence supporting the inference that deceased was the victim of an accidental in-

jury. Nor, considering the testimony of the doctor, can it be said that there is no evidence supporting the finding that the blow to the head was the sole cause of the death of insured. Order of United Commercial Travelers v. Simpson, 177 S.W. 169 (Tex.Civ.App.—Dallas, 1915, writ ref'd); Koger v. Mutual of Omaha Ins. Co., 152 W.Va. 274, 163 S.E.2d 672 (1968); Barnes v. Home Beneficial Life Ins. Co., 271 N.C. 217, 155 S.E.2d 492 (1967); Griffin v. Prudential Ins. Co., 102 Utah 563, 133 P.2d 333 (1943); Bickes v. Travelers' Ins. Co., 87 Colo. 297, 287 P. 859 (1930); 10 Couch on Insurance 2d, Sec. 41:45, pp. 70–71 (1962).

■ Appellant calls our attention to the so-called rule against pyramiding inferences, relying on Briones v. Levine's Department Store, Inc., 446 S.W.2d 7 (Tex. 1969), and Alamo Casualty Co. v. Stephens, 259 S.W.2d 729 (Tex.Civ.App.—Austin 1953, writ ref'd n. r. e.). It is doubtful if the rule on which appellant relies actually exists.[1] The true nature of the rule against

---

1. The origin of the rule is obscure. Judges and legal scholars who have made any serious effort to analyze the rule approach unanimity in condemning it. 1 Wigmore on Evidence, Sec. 41, p. 435 (3d ed. 1040); Anno: 5 A.L.R.3d 100, 105, 120–131 (1966).

In almost all of the Texas cases in which the no-inference-upon-an-inference rule is invoked, the incantation of the formula is mystifying, for the opinions clearly reflect that there is no demon, in the form of pyramided inferences, to be exorcised. The two cases relied on by appellant are excellent examples.

In Briones v. Levine's Department Store, Inc., supra, recovery by plaintiff depended on a finding that a lawnmower over which she had tripped "was amongst the clothes on a clothes rack." The evidence, as summarized in the opinion of a bare majority of the Supreme Court showed that in defendant's store an aisle was formed by a display table, at which plaintiff was examining merchandise, and a clothes rack. Plaintiff, who was at one end of the display table, took one step back and tripped over the lawnmower. The Court said that before the jury could find that the lawnmower was among the clothes in the clothes rack, it would have to infer that the rack ran the full length

of the display table, since there was no testimony to that effect. Even if this "presumption" be indulged, said the Court, the second "presumption" as to the location of the lawnmower among the clothes could not be indulged, because the law does not permit the pyramiding of one "presumption" upon another. 446 S.W. 2d at 10. The problem in *Briones* does not involve the basing of an inference upon an inferred fact. The weakness in plaintiff's case there, if we accept the majority's evaluation of the evidence, was simply that, even if it be assumed that the clothes rack ran the full length of the display table, this fact is insufficient to support the inference that the lawnmower was "amongst" the clothes in the clothes rack. Stated differently, the inference that the lawnmower was among the clothes in the clothes rack cannot be fairly drawn from the fact that the clothes rack ran the full length of the table, and this is true whether the location of the clothes rack was established by inference or by direct, positive and undisputed testimony.

In Alamo Casualty Co. v. Stephens, supra, plaintiff sought recovery for the loss by fire of a building covered by a fire policy issued by defendant. Defendant contended that plaintiff had intentionally

cumulative inferences was correctly stated by the late Justice Norvell, who then graced this bench, as merely " . . . a shorthand rendition of the rule which requires that verdicts be based upon more than surmise and guesswork." Phoenix Ref. Co. v. Powell, 251 S.W.2d 892, 902 (1952, writ ref'd n. r. e.).

■ In any event, the rule contended for by appellant, if it does exist, is inapplicable here. There is direct testimony to the effect that Mireles received an injury which was the sole cause of his death. The only inference which need be drawn in order to establish appellant's liability is that the injury was accidental. The conclusion that the injury was the sole cause of death rests on the fact, established by direct testimony, of the existence of the physical injury and not on the inferred fact of accident.

Appellant's remaining points assert that the evidence is insufficient to support the findings of the jury.

In appellant's motion for new trial, only the fourth and fifth paragraphs question the evidentiary support for the finding in response to special issue no. 1. The fourth paragraph asserts that the answer to the first special issue is not supported by the evidence " . . . because there was no evidence that Adolfo Leopoldo Mireles died of accidental bodily injuries." The fifth paragraph challenges the finding as being contrary to the evidence " . . . in that the undisputed evidence shows that Adolfo Leopoldo Mireles died of a cardiac infarction, or heart attack."

Paragraphs 8 and 9 of the motion for new trial challenge the finding, in answer to the third issue, that a heart attack did not contribute to the death of Mireles. Paragraph 8 contends that there is "no evidence" to show that a heart attack did not contribute to the death, while paragraph 9 asserts that the " . . . undisputed evidence shows that a heart attack, or heart condition, did contribute to his death."

■ These four assignments are "no evidence" assignments. Paragraphs 4 and 8 are expressly couched in "no evidence" language. Paragraphs 5 and 9 assert that the challenged findings cannot stand because the "undisputed evidence" shows the contrary. A statement to the effect that the "undisputed" evidence establishes the existence of a fact asserts that there is no evidence to the contrary. Cf. Texas Indemnity Ins. Co. v. Dunn, 221 S.W.2d 922, 923 (Tex.Civ.App.—Waco 1949, no writ), where it is held that an assignment to the effect that the evidence shows "conclusively that plaintiff had not suffered total and permanent disability" amounts to a complaint that there is no evidence showing total and permanent disability; and Spurlock v. Burnette, 365 S.W.2d 812, 814 (Tex. Civ.App.—Austin 1963, no writ), holding that an assignment that a finding is "against the uncontradicted testimony" is a "no evidence" complaint and cannot be enlarged to embrace the ground that the jury findings are against the overwhelming weight and preponderance of the evidence.

■ Since appellant did not complain in its motion for new trial that there was

---

set fire to the building, but this issue was resolved by the jury in favor of plaintiff. On appeal, defendant complained of the exclusion of evidence concerning plaintiff's use of intoxicants and his altercation with the woman who operated a business in the building prior to the fire. The holding on appeal was that the evidence was properly excluded because the fact that plaintiff, when drunk, was abusive to women " . . . does not tend to

prove that he knowingly set the building on fire." 259 S.W.2d at 735. Simply stated, the proffered evidence would not support the inference that plaintiff committed arson. Where the only holding is that the existence of fact A is no evidence of the existence of fact B, reference to the supposed prohibition against drawing of inferences from inferred facts is irrelevant.

"insufficient evidence" to support the answers to issues 1 and 3, and since the motion for new trial contains no assertion that the answers to such issues are against the overwhelming weight and preponderance of the evidence, we cannot consider appellant's points challenging the factual sufficiency of the evidence to support the jury's answers to those issues. Darryl v. Ford Motor Co., 440 S.W.2d 630 (Tex. 1969); Smith v. Texas Pipeline Co., 455 S.W.2d 346 (Tex.Civ.App.—Corpus Christi 1970, writ ref'd, n. r. e.).

Paragraph 6 of the motion for new trial asserts that the jury finding that decedent's death resulted from accidental bodily injury, directly and independently of all other causes (special issue no. 2), is not supported by the evidence " . . . because the evidence shows that a cardiac infarction, or heart attack, was the cause of death." This paragraph can be interpreted as embodying the contention that the finding is against the overwhelming weight and preponderance of the evidence or, more correctly, since the burden on this issue was on plaintiff, that the evidence is insufficient to support the finding. We so interpret it. We, therefore, will examine all of the evidence to determine whether there is sufficient evidence to support the finding that the death resulted independently of a heart attack.

In its brief, appellant summarizes the testimony of Dr. Kaback as follows:

"Dr. Harry Kaback began his testimony in response to a hypothetical question and at that time stated that in his opinion the chances were 60–40 that a blow to the head caused Mireles' death. Upon cross-examination Dr. Kaback lowered his opinion to 55–45, and by the time Dr. Kaback concluded his testimony and after having an opportunity to examine the death certificate signed by Dr. Montemayor which stated that the death was caused by a myocardial infarction, instant, due to overexertion stated that he himself was puzzled as to which it

was and that even though in 95 out of 100 cases a death of this nature would be due to heart attack or myocardial infarction, it could be possible that the man died as the result of a blow to the head."

■ In Insurance Co. of North America v. Myers, 411 S.W.2d 710, 713 (Tex.1966), it was pointed out that reasonable medical probability " . . . is determinable by consideration of the substance of the testimony of the expert witness and does not turn on semantics or on the use by the witness of any particular term or phrase." That is, although the physician uses "possibility" language in expressing his opinion, it may still amount to "probability" testimony when it is considered as a whole.

■ Here, the opinion of the doctor, while vacillating, must be considered as a whole. He stated directly that, in reasonable medical probability, the death of Mireles was caused by a blow to the head, rather than a heart attack. In evaluating the doctor's evidence, " . . . we must recognize that there are areas for jury and judge to construe the testimony of the doctor." Insurance Co. of North America v. Kneten, 440 S.W.2d 52, 54 (Tex.1969). While, in view of the sometimes equivocal nature of the doctor's testimony, the jury might well have determined that plaintiff had not discharged his burden of establishing that a heart attack did not contribute to the death of Mireles, we cannot say that, when all of the evidence is considered, the testimony is insufficient to support the conclusion that heart attack did not contribute to the death.

The cursory nature of the examination conducted by Dr. Montemayor, who signed the death certificate, was unknown to Dr. Kaback, but known to the jury. In evaluating the testimony of Dr. Kaback, the jury would be justified in concluding that the hedging nature of his testimony after being shown the death certificate was due to his mistaken belief that Dr. Montemayor had

conducted a careful examination of the corpse.

The judgment of the trial court is affirmed.

BARROW, C. J., concurs in the result.